THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD J. BONZI, Defendant-Appellant.

Second District   No. 77-561

Opinion filed November 22, 1978.—Rehearing denied December 19, 1978.

Mary Robinson and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Following a jury trial defendant, Ronald J. Bonzi, was found guilty of reckless homicide and was sentenced to two years' probation. He appeals.

The charge stemmed from the collision of two automobiles, a brown Cutlass driven by Roger Williams and containing members of his family, and a green Le Mans driven by defendant; Shella Boyle, Clifford Wilson and Marsha Peterson were passengers in defendant's car. Marsha died as a result of the collision; the passengers and drivers in both cars sustained injuries.

The collision occurred in the early evening hours of July 18, 1976, on Spring Creek Road, in Winnebago County. Spring Creek Road is a two-lane highway; the particular stretch of road involved follows a pattern of two curves of approximately ninety degrees each, separated by an expanse of straight road. On the date of the collision the speed limit was 45 m.p.h.; a warning sign located near the curve in the road indicated 40 m.p.h. and a "Pass With Care" sign was located nearby. The weather at the time of the collision was warm and clear, and the road was dry.

According to Williams, he was proceeding west on Spring Creek Road; he had negotiated the first curve and was at a point midway between the two curves when he observed defendant's car coming out of the second curve, approximately a block and a half away. Williams estimated the speed of defendant's car at more than 70 m.p.h. Seeing defendant's car begin to slide on the road, Williams pulled his car to the right. The defendant's car slid down the road at a 45-degree angle, and its right front struck the left front of Williams' car.

Ross Caldwell, a former police officer for the City of Rockford, lived in a house located near the straightaway between the two curves on Spring Creek Road. At the time of the collision, he was outdoors on his patio and heard the sound of tires squealing. He then observed the Williams' car pull off to the side of the road. The tire sounds continued; Caldwell saw

dust flying in the curve and observed defendant's car coming by at a rate of speed he estimated in excess of 40 m.p.h., fishtailing and then hitting the Williams' car.

Illinois State Trooper, Stephen Crow, was on routine patrol in the vicinity when he came upon the accident scene. Crow observed tire marks directly behind defendant's car, which he measured to be 331 feet 9 inches in length; the first 261 feet 9 inches were scuff marks and the final 70 feet were skid marks. He was unable, however, to estimate the speed of defendant's car.

Crow approached defendant's car and spoke to the defendant; defendant complained of head injuries and was not able to walk on his own. Crow assisted in removing defendant from the car and later placing him in the ambulance. He observed vomit on the front seat of the defendant's car and on defendant. Afterwards, Crow observed defendant at the hospital; according to Crow defendant's eyes appeared dilated and bloodshot; his speech was rather thick-tongued and he smelled of alcohol. In Crow's opinion defendant was intoxicated. Another Illinois State Trooper, Patrick Young, upon arriving on the scene, observed defendant sitting on the grass off the roadway; defendant had a bandage placed around his head, the front of his shirt was covered with what appeared to be vomit, and there was a very strong odor of alcoholic beverages about him. As defendant could not stand on his own, Young also assisted him into the ambulance with Officer Crow. In Young's opinion defendant was under the influence of alcoholic beverages.

Harold Hendrickson, a detective with the Illinois State Police, had occasion to speak to defendant at the hospital after the accident. According to Hendrickson, both of defendant's eyes were dilated, and he had a strong odor of alcohol on his breath; defendant's speech appeared "mute." Hendrickson was of the opinion that defendant appeared to be intoxicated.

At the time of the collision defendant and his passengers were returning from an outing at the Verdi Club in Rockford. All had consumed a quantity of beer with the exception of Clifford Wilson who was a diabetic; defendant had consumed approximately four 16 ounce glasses of beer. Clifford and Shella Doyle were seated in the back seat of defendant's car with Marsha Peterson seated next to defendant in the front seat.

Shella testified that Marsha started grabbing at the steering wheel of defendant's car, asking to steer; defendant kept pushing her away telling her not to grab the wheel. Right before the curve, Marsha got a loose grip on the steering wheel, saying that she wanted to steer around the curve. The next thing Shella remembered she was standing outside of the car about 10 feet away. In her opinion, defendant did not appear to be under

the influence of alcohol. On cross-examination she stated that at the time of the accident she was looking down at the floor of the car; she did not recall telling the police that defendant was going fast when he went into the curve.

Clifford Wilson also testified that half way through the first curve Marsha grabbed the steering wheel; at that point he felt a sudden jerk and the rear wheel of the car went off into the gravel. He remembered no skidding of the car prior to that time. On cross-examination he did not remember telling the police that he told defendant to slow down, or that he had stated that defendant was "a little under the influence of alcohol."

■■ ■ Defendant's first contention on appeal is that he was not proved guilty beyond a reasonable doubt. A person commits reckless homicide if he kills a person while driving a motor vehicle and the acts which caused death are such as are likely to cause death or great bodily harm to some individual and are performed recklessly. (*People v. Griffith* (1978), 56 Ill. App. 3d 747, 372 N.E.2d 404.) A person acts recklessly in this regard when he consciously disregards a substantial and an unjustifiable risk that his acts are such as are likely to cause death or great bodily harm to some individual and where such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in such a situation. *People v. Luttmer* (1977), 48 Ill. App. 3d 303, 362 N.E.2d 1093.

■■ It is defendant's position that the State's evidence failed to prove that he possessed the required reckless state of mind or that his conduct was the actual and legal cause of the offense. However, reckless state of mind is not an element of this offense. He argues first that the State failed to prove that he drove the vehicle at an excessive rate of speed. However, two eyewitnesses to the collision gave estimates of defendant's speed; Williams, the driver of the other car, testified that defendant's car was traveling in excess of 70 m.p.h.; Ross Caldwell estimated the speed of defendant's car in the curve to be over the 40 m.p.h. recommended speed in the curve. In addition, Clifford Wilson stated to Officer Crow that he told defendant to slow down because he was going too fast, and Shella Doyle stated to the officer that defendant was going fast around the curve on Spring Creek Road, though each witness did not recall making such statements. We believe on the basis of the foregoing testimony that there was sufficient evidence for the jury to find that defendant's car was traveling at an excessive rate of speed at the time of the collision.

■■ Defendant correctly points out that excessive speed, by itself, is not always sufficient to sustain a conviction for reckless homicide. (See *People v. Potter* (1955), 5 Ill. 2d 365, 125 N.E.2d 510.) However, a charge of reckless homicide may be justified by a combination of excessive speed and other circumstances which would indicate a conscious disregard of a

substantial risk likely to cause death or great bodily harm to others, and the circumstances are such that a reasonable person would act differently under the same situation. (*People v. Baier* (1964), 54 Ill. App. 2d 74, 78, 203 N.E.2d 633, 634, 635.) Here, in addition to the allegation of excessive speed, the State introduced evidence to prove defendant was intoxicated at the time of the collision. It is defendant's position that the indications of intoxication testified to by the State's witnesses were actually the result of injuries suffered by the defendant in the collision. In support of his contention, defendant cites *People v. Thomas* (1975), 34 Ill. App. 3d 578, 340 N.E.2d 174, where the court stated that symptoms such as slurred speech, unsure balance, red face and eyes could have been caused by the head injury defendant there received prior to the accident or the traumatic impact of the accident. However, in *Thomas* there was evidence that defendant, shortly after his arrest, was operated on for a serious brain injury suffered either prior to the accident or at the time of the accident; there was also no testimony as to the amount of alcohol defendant drank prior to the accident other than defendant's statement that he had a beer and a couple of shots of whiskey, and the bartender's statement to defendant's wife that he did not give the defendant any more to drink after he thought defendant had had enough.

■■ In the case before us, three State police officers testified that in their opinion defendant was intoxicated. Defendant himself testified that he had consumed four beers which were served in 16 ounce containers. Clifford Wilson, a passenger in defendant's car, indicated to Officer Crow that defendant appeared "a little under the influence of alcohol." While it is true that defendant received a head injury in the collision and according to the officers' testimony symptoms shown by defendant were also typical of persons injured in accidents, the strong odor of alcohol about defendant and the evidence that defendant had regurgitated on himself are not typical of accident victims whose injuries solely result from the collision. In light of the evidence before them, the jury as the triers of fact were free to reject defendant's theory that the symptoms that he displayed following the accident were the result of his injuries instead of evidence of his intoxication. Nor was the jury as the triers of fact required to accept defendant's theory that the accident was the result of Marsha Peterson's grabbing of the steering wheel. We therefore conclude that the evidence introduced at trial was sufficient to prove defendant guilty of reckless homicide beyond a reasonable doubt.

Next, defendant contends he was denied a fair trial due to erroneous jury instructions. Over defense objections the following instructions were submitted to the jury:

> "To sustain the charge of reckless homicide, the State must prove the following propositions:

FIRST: That the defendant unintentionally caused the death of Marsha Peterson, by driving a motor vehicle; and

SECOND: That the defendant drove the motor vehicle recklessly; and

THIRD: That the defendant drove the motor vehicle in a manner likely to cause death or great bodily harm.* * *

* * *

A person commits the crime of reckless homicide who unintentionally causes the death of another by driving a motor vehicle recklessly and in a manner likely to cause death or great bodily harm."

In both instances defendant objected to the use of the word "unintentionally." Defendant contends that the error involved in the submission of the above instructions is two-fold: The instructions conflict with the law of reckless homicide and with the approved Illinois Pattern Jury Instructions.

■■ Prior to 1975, the statute defining the offense of reckless homicide did not include the word "unintentionally." (See Ill. Rev. Stat. 1973, ch. 38, par. 9—3.) However, in 1975, the statute was amended to read as follows:

"(a) A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly, except in cases in which the cause of the death consists of the driving of a motor vehicle, in which case the person commits reckless homicide." (Ill. Rev. Stat. 1975, ch. 38, par. 9—3.)

As the amended section 9—3 is the applicable statute in the case before us, defendant's contention that the instructions are in conflict with the law of reckless homicide is clearly without merit.

■■ We note that the approved Illinois Pattern Jury Instructions (hereinafter IPI) defining the offense of reckless homicide and outlining the issues thereof do not include the term "unintentionally." (See IPI Criminal Nos. 7.09, 7.10 (1968)). The State points out that the Pattern Instructions were promulgated in 1968 and therefore do not reflect the 1975 amendment to the reckless homicide statute. Since the adoption of Supreme Court Rule 451(a), it is now the rule that the approved uniform instructions shall be used and modified only where the facts make the uniform instruction inadequate. (*People v. Phillips* (1970), 129 Ill. App. 2d 455, 461, 263 N.E.2d 353, 356; see also Ill. Rev. Stat. 1975, ch. 110A, par. 451(a).) In view of the amendment to the reckless homicide statute, the modification of the instructions in the present case was proper.

Defendant contends he was denied a fair trial because of certain remarks made by the prosecutor during the State's closing argument. Prior to trial defendant was granted a motion in limine that the results of a blood test performed on defendant would be inadmissible in any substantive context and admissible for impeachment purposes only. At trial the State presented evidence which it contended indicated defendant was intoxicated at the time of the accident; the defense countered with evidence of defendant's sobriety and that the symptoms described by the State's witnesses were due to shock and the trauma of the accident, not to intoxication. However, the State objected to testimony by defendant's mother regarding her son's condition the day following the accident. In chambers defense counsel explained that if he were to present a doctor's testimony regarding defendant's condition he might be opening the way for the State to introduce the results of the blood test. The court permitted defense counsel to question defendant's mother concerning her observations of defendant's condition. No doctor's testimony regarding defendant's condition was introduced.

■■ During the State's closing argument the prosecutor remarked:

"Where is the medical testimony saying that he had a concussion or a skull fracture or any kind of an injury which would produce that kind of a condition."

The defense counsel objected to the remark and asked for a mistrial. The trial court sustained the objection but denied the motion for a mistrial. We note that defense counsel did not request that the jury be instructed to disregard the remark of the prosecutor, and we are of the opinion that the sustaining of the objection served to remove the remark from consideration by the jury.

■■ Further, the State has the right to comment on the defendant's failure to call witnesses whose testimony could support its theory of the case. (*People v. Plum* (1976), 44 Ill. App. 3d 922, 358 N.E.2d 1235.) Defendant relies on *People v. Munday* (1917), 280 Ill. 32, 117 N.E. 286, where the court held that the State may use the failure of the accused to call witnesses as a circumstance against the accused only in cases where the witnesses are accessible to the accused and not to the prosecution. However, in *People v. Carr* (1969), 114 Ill. App. 2d 370, 252 N.E.2d 912, relying on *People v. Munday,* the court rejected defendant's contention that the prosecutor there drew unfavorable inferences from his failure to call witnesses who would have corroborated his testimony, stating that it was a fair inference that the witnesses, defendant's friends and his father, were more accessible to him than to the State. Similarly here the State suggests, and we agree, that although defendant's potential medical witnesses may not have been totally inaccessible to the State, it is

nevertheless a fair inference that they were far more accessible to the defense.

● ■ Defendant also objected to the following remark by the prosecutor made in his rebuttal to the defense's closing argument:

> "I want you to know though that I am an officer of this court, I am an attorney, I work for the State's Attorney's Office and you pay my salary."

Again, defense counsel objected and the objection was sustained; again there was no request that the jury be instructed to disregard it. While we do not condone this type of remark in closing arguments, nevertheless defendant's objection was sustained and removed from the jury's consideration. Given the clear and convincing evidence of defendant's guilt neither remark separately or taken together appear to have influenced the result reached here by the jury. *People v. Naujokas* (1962), 25 Ill. 2d 32, 182 N.E.2d 700.

For the foregoing reasons the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

SEIDENFELD, P. J., and RECHENMACHER, J., concur.