THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MICHAEL EVANS, Defendant-Appellant.

First District (2nd Division) No. 82—2306

Opinion filed May 8, 1984.

William J. Harte, of William J. Harte, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James S. Veldman, and Adam A. Dabek, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DOWNING delivered the opinion of the court:

Defendant, Michael Evans, appeals from his conviction after a bench trial of three counts of reckless homicide. (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a).) The sentence imposed was 30 months' probation with the special condition that defendant serve the first six months, as well as the weekends of the final 90 days, in the Cook County Department of Corrections. Defendant contends on review that he was not proved guilty beyond a reasonable doubt, and that the trial court abused its discretion in imposing the special condition of his probation.

At approximately 9:30 p.m. on March 24, 1982, Catherine Campbell was waiting in her Ford van for the traffic light to change at the intersection of 159th and Torrence Avenue in Calumet City, Illinois. Campbell's vehicle was facing north, occupying the east-center lane of northbound Torrence Avenue. That part of Torrence Avenue at which she was stopped, immediately south of the intersection, consists of four lanes. There is a lane for turning left onto 159th Street so as to proceed west; there are two center lanes for continuing north on Torrence Avenue; and there is a fourth lane for either turning right onto 159th Street so as to proceed east, or for continuing north and eventually merging with the east-center lane of Torrence Avenue.

While Campbell waited for the traffic light to turn green, she noticed a blue Plymouth automobile pull up immediately next to her in the west-center, northbound lane of Torrence Avenue. This car, containing four people, was being driven by defendant. At that same time, Campbell observed a white Plymouth automobile pull up immediately next to her on the other side of her van, occupying what was

the fourth or far east lane of northbound Torrence Avenue. This vehicle, also containing four people, was being driven by the codefendant in the trial below, John Best. Just before the traffic signal changed green, Campbell noticed that both cars on each side of her were inching forward to a point beyond the painted traffic line delineating the southern boundary of the intersection. As soon as the light turned green, the vehicles driven by defendant and Best accelerated at a high rate of speed. Campbell accelerated at a slower rate of speed but, within seconds, she had to "back-off" since Best immediately began to merge into the east-center lane as he drove through the intersection heading north.

Campbell then observed the two cars proceed north up Torrence Avenue, side-by-side, toward Michigan City Road.[1] The particular stretch of road on which defendant and Best were driving that night was asphalt-paved and "a little bumpy." The area itself was characterized as very dark at the time in question. According to two Calumet City police officers, on March 24, 1982, the posted speed limit along that portion of Torrence Avenue was either 40 or 45 miles per hour. Campbell estimated that the speeds of the two cars driving ahead of her were between 65 and 70 miles per hour; whereas, Diane Dougall, a passenger in defendant's car, estimated that defendant's speed reached "55, or maybe more."

Since it was night, Campbell eventually lost sight of both vehicles except for their taillights. Soon thereafter, by viewing the position of the respective taillights of each car less than one-half of a mile away, she noticed that defendant's vehicle veered over into the lane occupied by Best's car. About three or four seconds later, as Campbell arrived "to abouts where the tail lights [sic] went into one lane," she observed Best's car smoking as it appeared to be hooked to a green car in the southbound lanes of Torrence Avenue, approximately one-half mile north of 159th Street.

George Zorich was driving south on Torrence Avenue at approximately 9:30 p.m. on March 24, 1982. At some point south of Michigan City Road, he saw Best's car come across from the northbound lanes of Torrence Avenue directly into the southbound lanes and collide with a blue Chevrolet, being driven by Sherry Kassee, as it was proceeding south approximately four car lengths in front of Zorich. Following the collision with Kassee's car, Best's automobile became airborne and struck Zorich's vehicle on the hood. Another car, heading south on

---

[1]Michigan City Road transects Torrence Avenue at a point approximately one mile north of 159th Street.

Torrence Avenue, then collided with Zorich's vehicle from behind.

Officer Peter Miller of the Calumet City police department was dispatched to the scene of the accident that night. Upon his arrival, he observed that Kassee's car, which faced west across the innermost southbound lane of Torrence Avenue, had extensive front-end damage. He then saw that Best's vehicle, which faced south in the outermost southbound lane of Torrence Avenue, had very heavy rear-end and right side damage. The car left skid marks, measuring 150 feet in length, which extended across the median from the northbound lanes into the southbound lanes of Torrence Avenue. As Officer Miller approached Best's vehicle, he observed the body of Patricia Koerner, who had been riding as a passenger in the car, pinned in the back seat. The officer thereafter found the body of Ronald Gibbs, another passenger in the Best vehicle, lying in a wooded area nearby. Sherry Kassee also died as a result of injuries sustained when her car was struck by Best's vehicle.

An April 1982 grand jury charged defendant and John Best each with three counts of reckless homicide. Following a joint bench trial, the trial court found both offenders guilty as charged. Defendant's culpability was premised on the court's belief that "[defendant] blocked the progress forward of the Best vehicle *** [and] that Best had to take evasive action of some kind." At the sentencing hearing, following arguments presented in aggravation and mitigation, the trial judge sentenced codefendant Best to a term of 30 months' probation under the jurisdiction of the adult probation department of Cook County. A special condition of periodic imprisonment was imposed with the option of serving such term in the Lake County, Indiana, jail if it could be arranged.[2]

Regarding defendant, the court first ordered him to surrender his driver's license so that it could be forwarded to the Illinois Secretary of State for revocation. Defendant was then ordered to serve 30 months' probation under the jurisdiction of the adult probation department of Cook County. As a special condition, defendant was further ordered to serve the first six months, as well as the weekends of the final 90 days, of the probation period in the Cook County Department of Corrections. From the orders of conviction and sentence,

---

[2]The exact length of Best's incarceration is uncertain since page 625 of the record is missing and the half-sheet incorporated into this record only refers to the sentencing order entered against defendant. The trial court indicated that it could possibly order revocation of Best's Illinois driving privileges; however, due to the incomplete transcript of proceedings, it is not clear if the judge's observation was carried out.

defendant now appeals.

## I

Initially, defendant argues that the evidence adduced at the instant trial failed to establish his guilt beyond a reasonable doubt. We disagree.

In Illinois, a person commits reckless homicide if, while driving a motor vehicle, he unintentionally kills an individual and the acts which caused death are performed recklessly so as to create a likelihood of death or great bodily harm to some person. (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(a).) "A person acts recklessly in this regard when he consciously disregards a substantial and an unjustifiable risk that his acts are such as are likely to cause death or great bodily harm to some individual and where such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in such a situation." (*People v. Bonzi* (1978), 65 Ill. App. 3d 927, 931, 382 N.E.2d 1300, *appeal denied* (1979), 74 Ill. 2d 587; see generally Ill. Rev. Stat. 1981, ch. 38, par. 4—6.) Criminal liability attaches only to acts of such a reckless or wanton character as to be indicative of an utter disregard for the safety of others under circumstances likely to result in injury. (*People v. Petersen* (1982), 110 Ill. App. 3d 647, 659, 442 N.E.2d 941.) The reckless conduct must be wilful and wanton. *People v. LaCombe* (1982), 104 Ill. App. 3d 66, 72, 432 N.E.2d 672, *appeal denied* (1982), 91 Ill. 2d 576.

 It is defendant's position that the evidence proffered by the State failed to prove that his conduct was the actual and legal cause of the offense for which he was charged and convicted. It is, of course, clear that defendant's Plymouth automobile was not directly involved in the multivehicle collision which resulted in three fatalities on the night of March 24, 1982. Indeed, defendant's overt acts at the time in question were limited to operating his car at an excessive rate of speed, and veering into the east lane of northbound Torrence Avenue in front of Best's car. In order to secure defendant's reckless homicide conviction, it was therefore necessary for the State to prove that he was legally accountable for the deaths of the three motorists. One may be held accountable for the acts of another without having actively participated in the overt act. (*People v. Ray* (1979), 80 Ill. App. 3d 151, 156, 399 N.E.2d 977, *appeal denied* (1980), 81 Ill. 2d 586.) We view the present record as adequate to support defendant's conviction under the complicity theory.

To bring an accused within the purview of the Illinois accountability statute, the prosecution must establish, beyond a reasonable doubt,

that (1) either before or during the commission of an offense, (2) with the intent to promote or facilitate the commission of an offense, (3) the defendant solicited, aided, abetted or attempted to aid another person in the planning or commission of an offense. Ill. Rev. Stat. 1981, ch. 38, par. 5—2(c); *People v. Underwood* (1982), 108 Ill. App. 3d 846, 851, 439 N.E.2d 1080, *appeal denied* (1982), 91 Ill. 2d 579.

Regarding the case at bar, the evidence clearly showed that on the night of March 24, 1982, defendant and John Best, two young drivers, engaged in what is commonly known as street drag racing. Defendant attempted to refute this fact by claiming that he proceeded north on Torrence Avenue from the 159th Street intersection at a normal speed, and that his tires screeched as he accelerated because he disengaged the clutch after revving the engine in an effort to raise oil pressure. Catherine Campbell, however, testified that while she was waiting at the aforesaid intersection at the time defendant and Best pulled their cars up along each side of her, she noticed that both vehicles were inching forward to a point beyond the painted traffic line which represented the southern boundary of the intersection. As soon as the traffic signal turned green, Campbell observed defendant and Best's vehicles accelerate at a high rate of speed. In corroboration, Diane Dougall, who was seated in the rear seat of defendant's car that night, testified that defendant's acceleration up Torrence Avenue in the direction of Michigan City Road caused her to be pushed back into her seat.

Although the posted speed limit on the relevant stretch of road was either 40 or 45 miles per hour, Campbell, who had for three years assisted her husband, a professional auto racer, estimated that the speed of the two cars driving ahead of her on the dark, bumpy road was between 65 and 70 miles per hour. It was Dougall's estimation that defendant's vehicle reached a speed of "55, maybe more."

We find that this testimonial evidence established, without question, that defendant was one of two puerile young men bent on an illegal act which was certainly reckless and dangerous in character and which would require the use of force, albeit mechanical, that could very well result in the unlawful taking of a human life. As such, we are of the opinion that defendant was legally accountable for the deaths of Patricia Koerner, Sherry Kassee and Ronald Gibbs.

Defendant correctly points out that excessive speed, by itself, is not always sufficient to sustain a conviction for reckless homicide. (See *People v. Ziegler* (1979), 78 Ill. App. 3d 490, 496, 396 N.E.2d 1160, *appeal denied* (1980), 79 Ill. 2d 629.) "However, a charge of reckless homicide may be justified by a combination of excessive

speed and other circumstances which would indicate a conscious disregard of a substantial risk likely to cause death or great bodily harm to others, and the circumstances are such that a reasonable person would act differently under the same situation." *People v. Bonzi* (1978), 65 Ill. App. 3d 927, 931-32.

Here, the *indicium* of conscious disregard of substantial risk was defendant's act of maneuvering his motor vehicle as he raced north along Torrence Avenue toward Michigan City Road. Based upon the testimony of Campbell and Dougall, the trial court reasonably inferred that when defendant veered over into the east lane of northbound Torrence Avenue, he changed lanes in such a reckless and dangerous manner so as to cut off Best's automobile. It was thus perfectly logical and proper for the court to deduce that Best was forced to take the evasive action which resulted in the tragic vehicular collision.

We will not substitute our judgment for that of the trial court on questions involving witness credibility and evidentiary inferences, for the law commits to the trier of fact the determination of such issues. (*People v. Akis* (1976), 63 Ill. 2d 296, 298, 347 N.E.2d 733; *People v. Ahern* (1983), 119 Ill. App. 3d 532, 536, 456 N.E.2d 852.) "[T]hat determination will not be reversed unless the evidence is so improbable as to create a reasonable doubt of defendant's guilt [citation]." *People v. Davis* (1983), 95 Ill. 2d 1, 27, 447 N.E.2d 353.

The defendant's right to drive carried with it the correlative duty to refrain from reckless or wanton driving which utterly disregarded the safety of others. The defendant's driving certainly did not reach the aforesaid standard. In light of defendant's utter disregard for the lives of other motorists, the lives of his three passengers and his own life as well, we conclude that the evidence adduced at the instant trial was more than sufficient to establish defendant's legal accountability for the three senseless fatalities. Thus the evidence was sufficient to establish defendant's guilt beyond a reasonable doubt.

## II

The next issue for resolution concerns the propriety of that part of the trial court's sentencing order imposing the special condition that defendant serve the first six months, as well as the weekends of the final 90 days, of his probationary period in the Cook County Department of Corrections.

## A

■ Defendant contends that the special condition of his probation was not warranted in light of mitigative circumstances.

Our supreme court has firmly established that the determination of a sentence is a matter of judicial discretion and that, absent an abuse of this discretion, the sentence imposed by the trial judge may not be altered upon review. (*People v. Willingham* (1982), 89 Ill. 2d 352, 364, 432 N.E.2d 861; *People v. Cox* (1980), 82 Ill. 2d 268, 275, 412 N.E.2d 541.) It is not our function to serve as a sentencing court; thus, "[a] sentence imposed within the statutory limits will not be reduced merely because we, as a reviewing court, might have imposed a different punishment." *People v. Holloway* (1983), 119 Ill. App. 3d 1014, 1022, 457 N.E.2d 466, citing *People v. Perruquet* (1977), 68 Ill. 2d 149, 156, 368 N.E.2d 882.

Reckless homicide is a Class 4 felony. (Ill. Rev. Stat. 1981, ch. 38, par. 9—3(b)(2).) The permissible sentence ranges from a one to three-year term of imprisonment. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(7).) The maximum probationary period for the commission of a Class 4 felony is 30 months. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—6—2(b)(2).) An offender, as a condition of his probation, can be sentenced to a term of incarceration not to exceed six months. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—6—3(d).) Consequently, it is clear that the trial judge did not transcend the prescribed statutory framework by requiring that defendant be imprisoned during the first six months of his probationary period.

It is suggested that the lower court was unconcerned with defendant's rehabilitative potential in that it "arbitrarily" imposed the special condition of his probation. To the contrary, however, we discern careful consideration by the court of defendant's personal traits, his age, his educational as well as employment background, his family situation, and his lack of a juvenile delinquency record. Indeed, the imposition of the probationary period itself, as opposed to a sentence of a one- to three-year term of incarceration, is clearly indicative of the court's regard as "to the nature and circumstance of the offense, and to the history, character and condition of the offender ***." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—6—1(a).) Further the sentencing judge provided defendant's trial lawyer with ample opportunity, which counsel fully utilized, for argument in mitigation. Although the record evinces several significant mitigative circumstances, the cumulative import of such attendant conditions is in no way conclusive. This is because "rehabilitation and the seriousness of the offense are to be accorded equal weight in fixing punishment, and the prime responsibility for striking the proper balance between the two factors rests with the trial court." *People v. Crosser* (1983), 117 Ill. App. 3d 24, 32, 452 N.E.2d 857.

■ Defendant's citation of error regarding the disparity between his sentence and codefendant Best's sentence must similarly fail.[3] "[M]ere disparity in sentences, without more, does not warrant reduction of the greater sentence by a reviewing court." (*People v. Mick* (1980), 86 Ill. App. 3d 1022, 1028, 408 N.E.2d 1079.) Moreover, in Illinois, a trial court's determination of the punishment to be imposed involves consideration of the subjective circumstances presented in each individual case, *i.e.*, the defendant's mentality and general moral character, his abnormal or subnormal tendencies, and his natural inclination or aversion to commit crime. *People v. Dukett* (1974), 56 Ill. 2d 432, 452, 308 N.E.2d 590, *cert. denied* (1974), 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226; *People v. Reese* (1984), 121 Ill. App. 3d 977, 989.

At defendant's sentencing hearing, the State proffered evidence that since August 18, 1982, the date on which judgment of conviction was entered, defendant had been observed speeding and driving erratically through a residential area on a number of occasions. In addition to this aggravating factor indicative of a lack of remorse, the trial court also considered "that there is a greater degree of culpability here in the driving of Evans as opposed to the driving of Best. And it was my finding, and still is, that the manner in which Evans drove compelled Best to do whatever he had to do to avoid a collision with Evans."

In essence, our review of the record reveals that, taken separately, the two incarceration requirements of defendant's special probationary condition were each based upon the unique objective and subjective circumstances presented in this case. Defendant argues that such imprisonment will have a disruptive effect on his lifestyle; we feel it unnecessary to depict the disruption, if not sheer anguish, that has pervaded the lifestyles of the victims' families since the night of March 24, 1982.

### B

■ The final claim of error for review concerns defendant's contention that section 5—7—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—7—1(c)) precludes six months' incarceration in conjunction with a term of periodic imprisonment.

---

[3]It is defendant's averment that, notwithstanding the incomplete transcript of record before this court, Best's sentence of probation was conditioned only on periodic imprisonment, as opposed to straight-time incarceration, during the first six months of his 30-month probationary period.

Section 5—7—1(c) provides in pertinent part that: "The court shall not impose a sentence of periodic imprisonment if it imposes a sentence of imprisonment upon the defendant in excess of 30 days." The sentence here of six months' straight time as a condition of defendant's probation was, as previously stated, permissible under the sentencing provisions of the Unified Code of Corrections. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—6—3(d).) *Alternatively*, the trial court could have ordered the special condition that defendant serve up to 18 months' periodic imprisonment. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—7—1(d).) However, as the State concedes, "[i]f straight time of more than 30 days as a condition of probation is imposed, [the court] cannot impose in addition any periodic imprisonment." *People v. McMullen* (1980), 88 Ill. App. 3d 611, 615, 410 N.E.2d 1174.

The trial court could not impose six months' straight time together with 90 days' periodic imprisonment. We believe the trial court should make the determination of which special condition should be imposed. We therefore vacate the special condition of defendant's probation and remand this cause for resentencing within the prescribed statutory framework.

### III

■ Under the authority of section 8 of "An Act concerning fees and salaries ***" (Ill. Rev. Stat. 1983, ch. 53, par. 8) and *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, we assess defendant $50 in costs for the State's defense of this appeal, and hereby incorporate it as part of this judgment. We deny the State's request for an additional $25 for oral argument. This denial is predicated on our interpretation of the *per diem* provisions of the statute ("For each day actually employed in the trial of a case, $25") as referring to an actual trial in the circuit court, not to an oral argument on appeal.

For the reasons set out herein, the judgment of conviction is affirmed, the sentencing order is vacated in part, and this cause is remanded to the circuit court of Cook County for resentencing.

Judgment affirmed; sentence vacated in part; cause remanded for resentencing.

STAMOS and PERLIN, JJ., concur.