THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD DUNNEGAN, Defendant-Appellant.

Second District No. 2—86—0104

Opinion filed January 26, 1987.

974

Stephen C. Pemberton, of Williams & McCarthy, of Oregon, for appellant.

Dennis Schumacher, State's Attorney, of Oregon (William L. Browers and Cynthia N. Schneider, both of State's Attorney's Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Donald Dunnegan, was charged with reckless homicide (Ill. Rev. Stat. 1983, ch. 38, par. 9—3(a)) and concealment of a homici-

dal death (Ill. Rev. Stat. 1983, ch. 38, par. 9—3.1(a)). At a pretrial hearing on defendant's motion to suppress his statement the motion was denied, and the case proceeded to trial. Following a bench trial, defendant was found guilty on both charges and was sentenced to one year in the Department of Corrections for the offense of reckless homicide and two years' probation for the offense of concealment of a homicidal death. This appeal ensued.

In this court defendant contends: (1) the trial court erred in denying defendant's motion to suppress his statement; (2) the evidence adduced at trial failed to establish defendant's guilt beyond a reasonable doubt of reckless homicide; (3) the evidence adduced at trial failed to establish defendant's guilt beyond a reasonable doubt of concealment of a homicidal death; (4) the indictment for concealment of a homicidal death failed to state an offense; and (5) the trial court erred in sentencing defendant to a term of imprisonment for reckless homicide.

On April 18, 1985, defendant, Robert Hartz, and Joseph Russell were on their way from Maustin, Wisconsin, to Iowa with a load of recycled axles and wheels for mobile homes. The men sat three astride on a bench seat of a pickup truck which was hauling a trailer full of axles. The three men had consumed a 12-pack of beer purchased in Maustin and part of another 12-pack purchased in Janesville, Wisconsin. En route to Iowa, defendant stopped the truck and trailer on the shoulder of the southbound lane of Highway 51 near Rochelle, Illinois, so the parties could urinate.

After urinating, defendant reentered the truck, Hartz slid in next to defendant, and the door closed. Defendant put the truck into gear and started off. Russell began running to get into the truck. Hartz held the passenger door open so Russell could jump in the truck but Russell slipped and rolled under the trailer. After defendant had stopped the truck and backed it up so Russell's body could be freed from the trailer tires between which it had become wedged, Hartz and defendant put the body in the truck. They proceeded to Dixon, Illinois, where they stopped at Hardee's for something to eat and at a phone booth so Hartz could call his girlfriend. The men then proceeded to the emergency room of the hospital in Dixon, arriving there at about 8:30 p.m. Russell was pronounced dead.

Subsequently, James Kerns, a special agent with the State Police Criminal Investigation Division, arrived at the hospital about 10:30 p.m. to investigate the incident. Kerns spoke privately with defendant in an examining room which was across the hall from the waiting area of the emergency room. At about 11:17 p.m. Kerns taped defendant's statement regarding the incident.

In defendant's motion to suppress defendant contended that his statement was procured pursuant to a custodial interrogation by Kerns and that, prior to the interrogation, defendant was not informed of his *Miranda* rights. At the hearing on defendant's motion to suppress, Agent Kerns and Robert Hartz testified on behalf of the State. Defendant testified on his own behalf. At the conclusion of the suppression hearing, the court found that defendant was not in custody at the time he gave his statement to Kerns and, therefore, the statement was admissible.

The case proceeded to a bench trial with testimony presented by the three State police troopers involved in the investigation of the crime scene, by a husband and wife who observed defendant and Hartz consuming food at Hardee's after the incident and prior to the men's arrival at the hospital, by a patient present in the emergency-room waiting area with whom defendant conversed, by Agent Kerns, by Robert Hartz, and by the defendant. Facts brought out through the testimony presented at these hearings will be included in this opinion where appropriate.

After hearing all the evidence and arguments of counsel, the trial court found defendant guilty of both reckless homicide and concealment of a homicidal death. At a subsequent sentencing hearing, defendant received a term of one year's incarceration on reckless homicide and two years' probation on concealment of a homicidal death.

In his first contention defendant maintains that the trial court erred in denying his motion to suppress the statement given by him to Agent Kerns on the night of the incident since defendant was not read the warnings required by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, prior to the giving of his statement.

■■ ■ The *Miranda* warnings are required to precede only statements made as a result of custodial interrogation. (*People v. Romano* (1985), 139 Ill. App. 3d 999, 1009, 487 N.E.2d 785.) To determine whether a statement was made in a custodial setting, the court must focus on all of the circumstances surrounding the questioning, with no single factor deemed controlling, to decide whether the defendant was in custody or deprived of his freedom of action in any significant way prior to the questioning. (139 Ill. App. 3d 999, 1009, 487 N.E.2d 785; *People v. Savory* (1982), 105 Ill. App. 3d 1023, 1028, 435 N.E.2d 226.) Several factors are relevant to this inquiry: (1) the place of the interrogation; (2) any statement or nonverbal conduct indicating an accused is not free to leave; (3) the extent of the knowledge of the po-

lice officers and the focus of their investigation; (4) the intentions of the police officers; and (5) the objective circumstances surrounding the investigation to determine what a reasonable man innocent of any crime would perceive. (*People v. Romano* (1985), 139 Ill. App. 3d 999, 1009, 487 N.E.2d 785; *People v. Newsome* (1983), 117 Ill. App. 3d 1005, 1007-08, 454 N.E.2d 353.) We conclude from our application of these factors to the evidence introduced at the suppression hearing that the trial court's ruling on defendant's motion to suppress was not manifestly erroneous and, therefore, should not be reversed. 117 Ill. App. 3d 1005, 1010, 454 N.E.2d 353.

Agent Kerns' questioning of defendant occurred in an examining room located across the hall from the waiting area of the emergency room where defendant and Hartz had taken Russell's body. Although defendant testified that several troopers were in the hallway while he remained at the hospital, Kerns stated that only one trooper was still present at the time he spoke with defendant. Moreover, no trooper was stationed outside the examining-room doorway during the questioning or during the time Kerns had to leave the room to get batteries for his tape recorder. Also, no evidence was presented to show that defendant was told he could not leave the examining room.

■ At the time Kerns asked defendant to accompany him into the examining room, the agent was trying to get information from defendant concerning Russell's death prior to the agent's proceeding to the location of the incident. We do not believe it was unreasonable for Kerns to seek the privacy of the examining room for questioning and recording defendant's responses, nor do we believe that this action deprived defendant of his freedom of action in any significant way. The situation here was much different from the custodial environment presented where a defendant has been taken to an isolated interrogation room at a police station or confined in a squad car or surrounded by several officers while being questioned. We conclude, therefore, that the fact that the questioning occurred in a hospital examining room does not establish that defendant was in custody at that time.

The second factor relevant to determining the custody issue is whether statements or nonverbal conduct signified to the defendant that he was not free to leave. As evidence of his deprivation of his freedom of action, defendant relies on the statement of one trooper who told defendant he could not leave the hospital. However, it is significant, we believe, that this statement occurred within a very short period of time after defendant's arrival at the hospital and in response to a question posed by defendant regarding whether he and

Hartz could leave. At the time that the trooper indicated to defendant that he and Hartz needed to remain, the trooper explained that the two men had to wait until someone from the Division of Criminal Investigation showed up. Given the fact that defendant and Hartz were the only individuals present at the time of an incident which resulted in a death, it was not unreasonable for the trooper to tell them they needed to remain until an investigator showed up to gather information regarding the incident. Neither this officer, in explaining that defendant and Hartz needed to remain, nor any other officer, told defendant that he should consider himself in custody, under arrest, or likely to be charged with an offense. Further, we do not believe the trooper's statement in any way implied that defendant and Hartz were in custody.

Defendant also argues that nonverbal conduct depicted by the presence of troopers in the hallway outside the waiting area of the emergency room implied custody; we disagree. Although the testimony showed that several troopers were in the hallway outside the waiting area while defendant and Hartz waited for Kerns to arrive, the evidence did not show that the troopers were "manning," as defendant maintains, the doorway out of the waiting area or that they were keeping the defendant and Hartz under surveillance. Thus, it was not shown that any nonverbal conduct restricted defendant's freedom to leave.

The third relevant factor to be considered is the extent of the knowledge of the police officers and the focus of their investigation. Here, it was shown that at the time of the questioning of defendant, little was known regarding Russell's death. According to Kerns, at the time he spoke with defendant, the agent did not even know whether any criminal activity had occurred and, thus, he never considered defendant to be in custody and entitled to his *Miranda* rights. Kerns stated that as far as he was concerned, he was simply making an investigation of an accident which resulted in a death. In light of this fact, it cannot be said that defendant was the focus of the State Police's investigation at the time Kerns questioned him.

The next factor relevant to a determination whether a defendant is in custody prior to questioning is the intention of the police officers, *i.e.*, whether the officers believed the defendant was free to leave at the time of the initial questioning. As mentioned above, Kerns had no knowledge regarding whether any criminal activity surrounded Russell's death at the time he questioned defendant. Thus, prior to questioning, Kerns could not have determined that defendant was a suspect in the death. It is apparent that Kerns questioned

defendant only in an effort to learn the facts surrounding Russell's death. As citizens have a duty to cooperate with police in investigations (*People v. Cart* (1981), 102 Ill. App. 3d 173, 185, 429 N.E.2d 553, *cert. denied* (1982), 459 U.S. 942, 74 L. Ed. 2d 199, 103 S. Ct. 255), we are of the opinion that at the time of the questioning, Kerns believed defendant was free to leave but merely considered it to be defendant's duty to assist in the investigation of Russell's death by staying and giving a statement regarding how the death had occurred. In fact, testimony showed that defendant was very congenial and cooperative during Kerns' questioning. We do not believe, therefore, that defendant's cooperation in remaining at the hospital can now be construed as a restraint.

The last factor in determining whether defendant's statement was taken in a custodial setting is whether a reasonable man innocent of any crime would perceive he was in custody. Contrary to defendant's contention, the time during which he was detained at the hospital was not so unreasonable as to lead him to believe he was in custody.

Defendant arrived at the hospital at approximately 8:30 p.m. Shortly thereafter, several State troopers arrived. Defendant was asked a few general questions and was told by one trooper he would have to remain until an investigator arrived. Neither this officer, nor any of the others present, told defendant he was under arrest or in custody. Although Kerns did not arrive until about 10:30 p.m., there was no evidence concerning what time he was contacted at home and asked to go to the hospital. After initially questioning defendant, Kerns then asked defendant if he could ask defendant similar questions and tape them. This taped statement occurred about 11:17 p.m. In light of the fact that a friend had been killed, we do not believe that a reasonable innocent person would object to the length of time he might have to remain at a hospital in order to clarify the circumstances surrounding that death, nor do we believe that a reasonable innocent person would perceive such a delay as a custodial situation.

■ We conclude from our analysis of the above factors that the trial court's decision to deny defendant's motion to suppress was not manifestly erroneous. Nevertheless, even if the trial court erred and the *Miranda* warnings should have been given, any error in the admission of defendant's statement at trial was harmless. The statement in which defendant related that Russell had been killed after jumping out of defendant's truck while the truck was traveling 55 to 65 miles per hour was known to be false, and a false exculpatory statement has independent probative value as evidence of a defendant's consciousness of guilt and is admissible. (*People v. Watson* (1982), 103 Ill.

App. 3d 992, 995, 431 N.E.2d 1350.) Moreover, this evidence of defendant's consciousness of guilt was established by both Hartz and a patient in the hospital waiting room who conversed with defendant. Hartz testified that defendant instructed him to tell the police that Russell had jumped out of the truck because Hartz and the defendant "were in the wrong." Also, the patient stated that, while conversing with defendant, the defendant told him the same story, *i.e.*, that Russell had jumped from the truck at 55 to 60 miles per hour. Thus, defendant's consciousness of guilt was attained through other evidence besides defendant's statement, and, therefore, any admission of the statement was harmless.

■■ ■ Defendant's second contention is that the evidence adduced at trial was insufficient to prove him guilty beyond a reasonable doubt of reckless homicide. A person commits reckless homicide if he kills another while driving a motor vehicle and the acts which cause death are such as are likely to cause death or great bodily harm and are performed recklessly. (*People v. Walljasper* (1981), 97 Ill. App. 3d 81, 82, 422 N.E.2d 251.) One acts recklessly when he consciously disregards a substantial risk that his acts are such as are likely to cause death or great bodily harm to some individual and where such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in such a situation. *People v. Bonzi* (1978), 65 Ill. App. 3d 927, 931, 382 N.E.2d 1300.

■■ Recklessness, like any other mental state, is to be inferred from all the facts and surrounding circumstances in the record. (*People v. Hawn* (1981), 99 Ill. App. 3d 334, 338, 425 N.E.2d 1024; *People v. Zahner* (1979), 77 Ill. App. 3d 706, 707, 396 N.E.2d 593.) Whether the given conduct is "reckless" for the purpose of finding a driver guilty of reckless homicide is a fact question for the trier of fact to decide. (*People v. Gittings* (1985), 136 Ill. App. 3d 655, 659, 483 N.E.2d 553.) Under the facts and surrounding circumstances of this case, we do not believe the trial court erred in finding defendant guilty beyond a reasonable doubt of reckless homicide.

■■ The facts, as shown by the testimony presented at trial, established that defendant pulled his truck and trailer off the highway onto the shoulder and stopped so that he, Hartz, and Russell could urinate. Defendant was the first to reenter the truck, and then Hartz slid in next to defendant on the bench seat. Defendant put the truck into gear and began to pull out onto the highway. The victim, Russell, began running after the truck. As defendant proceeded to maneuver onto the highway, Hartz held open the passenger door with one arm and reached across with his other arm to grab hold of Russell.

Russell, however, lost his grip and fell under the trailer. During these maneuvers, defendant never attempted to stop his truck. In fact, he did not refrain from accelerating onto the highway until Hartz yelled at him to stop. By that time, Russell's body was wedged between the tires of the trailer.

Defendant argues that in not looking to see whether Russell, as well as Hartz, was in the truck before he began to pull out onto the highway, he was merely negligent. According to defendant's testimony, when Hartz slide next to him on the seat and defendant heard the passenger door close, he assumed Russell was also in the truck. However, despite defendant's claims here, the evidence was not conclusive that the door closed shut.

Nevertheless, in a seat whose width was such that defendant, by his own testimony, could reach the passenger door from the driver's seat, it is difficult to believe that defendant was unaware of Hartz' efforts to help Russell into the truck. Despite this fact, defendant disregarded the foolhardy attempts of this intoxicated 16-year-old youth to climb into defendant's truck. Instead, defendant continued to accelerate to a speed anywhere from 15 to 25 miles per hour as Russell was trying to enter the truck. By consciously disregarding the substantial risk of death or bodily harm to Russell being brought about by defendant's continued acceleration of the truck, defendant failed to exercise the standard of care a reasonable person would exercise in such a situation. Moreover, given Russell's age, level of intoxication, and unfamiliarity with the area in which he was about to be deserted, defendant should have anticipated the youth's efforts to climb into the truck once Russell realized he was going to be left behind.

Like the State, we question defendant's testimony that only five seconds transpired from the time defendant began to pull out onto the highway until the time Russell fell under the trailer. As the State points out, it appears unlikely that a truck and trailer carrying a load of 13,600 pounds could accelerate from a complete stop to 15 to 25 miles per hour in five seconds. Moreover, that defendant was accelerating at the latter rate appears evident from the skid mark found on the highway, a mark 46 feet 6 inches in length, caused when Russell's body became caught in the tires preventing their rotation.

We conclude that defendant acted recklessly in failing to slow and stop his truck at the moment he became aware of Russell's actions and that this reckless conduct caused the death of Russell. Defendant's conviction on reckless homicide was proper.

Defendant next contends that the evidence adduced at trial failed to prove him guilty beyond a reasonable doubt of concealment of a

homicidal death. Defendant's main position here is that since the State failed to prove beyond a reasonable doubt that defendant was guilty of reckless homicide, Russell's death must be considered accidental rather than homicidal. Accordingly, if the manner of death was accidental, the State could not prove beyond a reasonable doubt that the offense of concealment of a homicidal death occurred. However, since we have already found that the evidence was sufficient to prove defendant guilty of reckless homicide, we find this particular position without merit.

● 9 Two elements must be established to prove concealment of a homicidal death: knowledge that a homicidal death had occurred and some affirmative act of concealment of the death by defendant. (*People v. Franklin* (1985), 130 Ill. App. 3d 514, 519, 474 N.E.2d 776.) Defendant's act of concocting a false story regarding how Russell had jumped from the truck while it was traveling 55 to 60 miles per hour, thereby indicating that the death was a suicide, is representative of defendant's knowledge that the death was homicidal in nature rather than accidental. Moreover, his knowledge was shown by his telling Hartz to relate this same false story to the police since he and Hartz "were in the wrong."

To be guilty of concealment of a homicidal death, however, one must also take some affirmative acts to conceal the death. The evidence showed that after putting Russell's body in the truck, defendant failed to summon any help on the operable CB radio in his truck. Additionally, he drove past an exit to a city where he could have reported the incident, drove through a manned toll booth without requesting any assistance, and proceeded to a restaurant where he stopped for food and coffee so he and Hartz could "sober up" after having drunk beer in the truck since their departure from Wisconsin. Subsequent to this stop, defendant made another stop to permit Hartz to call his girlfriend. These acts, although depicting reprehensible conduct, do not establish affirmative acts of concealment in the ordinary sense (see, *e.g.*, *People v. Franklin* (1985), 130 Ill. App. 3d 514, 474 N.E.2d 776 (victim's body wrapped in bedcover or furniture cover and dumped in trash dump in an out-of-the way area after being killed elsewhere); *People v. Dyer* (1975), 28 Ill. App. 3d 436, 328 N.E.2d 716, (victim killed in a shed located in the country and left there)), particularly in light of the fact that defendant and Hartz did eventually take Russell's body to the hospital once they had fabricated an explanation for his death.

■ Thus, from our examination of the record, we conclude the evidence was insufficient to prove defendant guilty beyond a reason-

able doubt of concealing a homicidal death, and, therefore, defendant's conviction on concealment is reversed. Because of our decision on this issue, it is not necessary to review defendant's fourth contention that the indictment for concealment of a homicidal death failed to charge an offense.

██ █ Instead, we next address defendant's final contention that the trial court erred in sentencing him to one year's imprisonment for the offense of reckless homicide and that this sentence should be reduced to one of probation. This court has the discretionary power to reduce an excessive sentence, but the trial court's sentencing decision will not be disturbed absent an abuse of discretion. (*People v. Steffens* (1985), 131 Ill. App. 3d 141, 151, 475 N.E.2d 606.) In determining whether to exercise its power to reduce punishment, a reviewing court should consider the superior opportunity of the trial judge during trial and at the sentencing hearing to acquire information about the defendant which would be helpful in deciding suitable punishment. (*People v. Jones* (1985), 134 Ill. App. 3d 1048, 1053, 481 N.E.2d 726.) A sentence imposed within statutory limits will not be reduced merely because a reviewing court might have balanced the sentencing factors differently and imposed a different punishment. *People v. Perruquet* (1977), 68 Ill. 2d 149, 156, 368 N.E.2d 882; *People v. Holloway* (1983), 119 Ill. App. 3d 1014, 1022, 457 N.E.2d 466.

Reckless homicide is a Class 4 felony. (Ill. Rev. Stat. 1983, ch. 38, par. 9—3(b)(2).) As such, the permissible sentence ranges from a one- to a three-year term of imprisonment. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(7).) Thus, by sentencing defendant to a one-year term of incarceration, the trial court clearly did not exceed the prescribed statutory framework.

██ The defendant contends, however, that the trial court abused its discretion by not properly considering the factors in mitigation which were advanced by defendant and by imposing a sentence which was inconsistent with the ends of justice. Our review of the record reveals that, while the court did not specifically enumerate which of the 12 factors in mitigation it considered (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.1), it did acknowledge that probably half of the factors would apply to the defendant's situation while the other half would not. Despite the mitigative circumstances which existed, the cumulative import of these attendant conditions was in no way conclusive as to what sentence was proper. (See *People v. Evans* (1984), 124 Ill. App. 3d 634, 641, 464 N.E.2d 1083, *cert. denied* (1985), 469 U.S. 1211, 84 L. Ed. 2d 328, 105 S. Ct. 1179.) Thus, we do not believe an abuse of discretion occurred simply because the trial court failed to

assign the weight the defendant believed should be given to the mitigating factors he advanced.

Defendant also argues that probation cannot be denied unless the trial court makes a finding that probation would be inconsistent with the ends of justice, and since the court here did not make such a finding, defendant's sentence of imprisonment on reckless homicide was inappropriate.

Section 5—6—1 of the Unified Code of Corrections provides in relevant part:

> "[T]he court shall impose a sentence of probation or conditional discharge upon an offender unless, having regard to the nature and circumstance of the offense, and to the history, character and condition of the offender, the court is of the opinion that:
> \* \* \*
> (2) probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice." (Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—1(a)(2).)

Thus, according to this statutory provision, whenever a sentence of imprisonment is imposed, the record must indicate that the judge is of the opinion that imprisonment is necessary for the protection of the public and that probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice. (*People v. Cox* (1980), 82 Ill. 2d 268, 281, 412 N.E.2d 541.) Substantial compliance with section 5—6—1 may occur, however, even if the judge does not specifically say that "imprisonment is necessary for the protection of the public" or that "probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice." 82 Ill. 2d 268, 281, 412 N.E.2d 541.

In the instant case, although the trial court did not use the exact words of this statute, it did substantially comply with section 5—6—1. In sentencing the defendant, the court pointed out that the main purpose in sentencing a defendant is to attempt to rehabilitate him and that, therefore, the primary sentence of the court should be probation. However, the court went on to impose a sentence of imprisonment rather than probation finding that the court should "send [a message] to the people of the State of Illinois that we can't put up with" the behavior involved in this case. We believe these statements by the court establish that the court considered a sentence of probation but rejected it because it would deprecate the seriousness of defendant's conduct and would be inconsistent with the ends of justice.

█ Defendant maintains, however, that these statements by the court relate largely to the offense of concealing a homicidal death, and the reprehensibility of such an act, rather than to the offense of reckless homicide. Therefore, defendant concludes, if a sentence of imprisonment was required, it should have been imposed on the concealment conviction rather than on the reckless-homicide conviction. However, as the State points out, the court in sentencing defendant on the two convictions, specifically noted that "this is all one offense." As a trial judge is not limited to the facts of the specific conviction before him and is always entitled to consider all factors bearing on an appropriate sentence (see *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344), it was proper for him to consider the entire extent of the defendant's behavior in imposing sentence on the reckless homicide. Accordingly, we do not believe the trial court erred in sentencing defendant to one year's incarceration on the reckless homicide conviction.

For the reasons set forth above, defendant's conviction for the offense of reckless homicide is affirmed, and defendant's conviction for the offense of concealment of a homicidal death is reversed.

Affirmed in part, and reversed in part.

LINDBERG, P.J., and NASH, J., concur.