(No. 33444.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RUTH E. SAVAGE, Plaintiff in Error.

*Opinion filed March 24, 1955.*

WILLIAM F. GIBBONS, and ROBERT F. MONAGHAN, both of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, GEORGE W. SCHWANER, JR., JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and W. J. McGAH, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Ruth E. Savage was indicted in the criminal court of Cook County on a charge of violating the statute which prohibits the abduction of infants. (Ill. Rev. Stat. 1953, chap. 38, par. 385.) She waived a trial by jury. Her motions for judgment of not guilty at the close of the case for the People and after all the evidence had been received were overruled as were her motions for a new trial and in arrest of judgment. The court found her guilty and sentenced her to a term of eight years in the Illinois State Reformatory for Women. The errors assigned relate to the legal sufficiency of the evidence to convict and to the claim that the trial court failed to give the defendant a fair trial because of an alleged consideration of evidence not produced in court.

Most of the evidence is undisputed. It establishes that Roland Frost and his wife, Madeline, were living with

their six children in an apartment building located at 714 North Clark Street in the city of Chicago. On the evening of May 31, 1953, at about 6:45 P.M., Mrs. Frost left her two small daughters, one three years old and the other two, in front of the building while she went upstairs. When she came down the children had disappeared. She looked for them but was unable to find them. Some neighborhood children told her that a woman had them. She reported their disappearance to the police.

Defendant lived with her husband, Scott Savage, in an apartment at 3152 Warren Avenue in the city of Chicago. They had no children. About 11:20 P.M. on May 31, 1953, defendant appeared at her home with the two Frost children. Her husband inquired where she got the children and she said that she found them in the 1600 block on West Madison Street. Defendant fed the children and gave them a bath. Her husband dressed and told her that he was going out to find their parents. When he returned the defendant and the children were gone. He searched for them until about 2:00 o'clock in the morning but failed to find them. Defendant was at her apartment with the children only about forty-five minutes.

Defendant was next seen with the children in the vicinity of Kedzie Avenue and Madison Street by Walter Gordon, an employee of the Chicago Fire Department, sometime after midnight on June 1. One little girl had on only a pair of panties and the other only a dress. Neither had on shoes. The night was cold. Gordon questioned defendant and she told him that they were walking to Cicero and Madison. He stated that she should not walk the children that far. She told him to mind his own business. Later he saw four men come out of a tavern and talk to the defendant. One of these men placed his shirt around one of the children. When the men left, defendant walked down Madison Street with the children. Gordon then reported the matter to the police.

As a result of Gordon's report some thirteen policemen searched the neighborhood for the children. One of them was Francis Higgins, who testified at the trial. He testified that he met Walter Gordon, the fireman, and went with him to the 3300 block on West Monroe Street. There they went from house to house. At about 6:00 o'clock in the morning they found the defendant with the children in a hallway about to enter a building. The children were dressed as they were when Gordon had first seen them. When defendant was asked why she had the children, she became hysterical and started to cry. She said that she had stayed upstairs in the building with the children but she was unable to show the officers the room she stayed in. At 1:35 P.M. that same day a statement was taken. from the defendant in which she admitted taking the children from the vicinity of 714 North Clark Street without permission of their parents. She also said that she took them to her home in a cab and that after bathing them she put them in bed and mistreated them sexually.

Defendant testified at the trial. She stated that she had been drinking heavily in various taverns all afternoon on May 31, and professed to have little recollection of what happened thereafter. She said that she had picked up the children in the vicinity of 714 North Clark Street but did not know why. She admitted that she took them to her home and protested that when she was arrested she was about to try to contact the police and give them back to their parents. She denied she had mistreated the children.

On defendant's behalf it is contended that the evidence shows conclusively that at the time of the commission of the alleged offense she was so intoxicated as to be incapable of entertaining the specific intent charged in the indictment. It is true that where specific intent is an element of the crime, proof that defendant was incapable of forming the intent because of intoxication is a defense. (*People* v. *Cozzie,* 397 Ill. 620; *People* v. *Jones,* 263 Ill. 564.) How-

ever, capacity to form intent is a question of fact to be established as any other fact. A specific intent need not be expressed but may be gathered from all the facts in evidence. (*People* v. *Garafola,* 369 Ill. 232.) From an examination of the record we cannot say that the evidence shows that defendant was intoxicated to the extent of being incapable of forming the intent charged. The testimony of her husband, Scott Savage, has an important bearing on this question. He does not say that she was intoxicated. "I was under the impression she could have been drinking with some friends or some women that had some kids and the woman got drunk and she took them." His description of her conduct in feeding and bathing the children does not indicate intoxication. The fact that defendant took the children out of the apartment after her husband had left to search for the parents indicates that she was interested in keeping the children and thwarting her husband's announced plan to return them to their home. This conduct indicates that defendant was capable of forming the intent charged. To it may be added her conversation with the witness Gordon when he met her on the street which indicates that she had a plan of action and that she resented his interference. Her recollection of events shortly after her arrest also repels the idea that she was intoxicated to the extent she now claims.

Affirmance need not, however, rest only upon the sufficiency of the evidence to establish intent. The statute provides that the offense may be committed by forcibly taking, carrying or enticing away an infant with intent to conceal and imprison, or by concealment and imprisonment. (Ill. Rev. Stat. 1953, chap. 38, par. 385.) Specific intent is not an element in case of actual concealment or imprisonment. The indictment in this case not only charges an enticement with intent to conceal but in the second count it charges a felonious concealment and imprisonment as well. All counts grow out of and relate to the same trans-

action. The court found the defendant guilty as charged in the indictment. This general finding of guilty is presumed to be based on any good count in the indictment to which the proof is applicable. (*People* v. *Diekelmann,* 367 Ill. 372; *People* v. *Gillespie,* 344 Ill. 290.) If, therefore, the evidence establishes the guilt of the defendant under the second count, the judgment would be sustained regardless of the defense of intoxication.

In our opinion the evidence establishes beyond a reasonable doubt a felonious concealment and imprisonment. It is undisputed that defendant took the children from their home without the consent of their parents and held them for nearly twelve hours during which time their whereabouts were kept secret. The children were found only after thirteen policemen participated in a house to house search and finally located the defendant and the children in the premises at 3330 West Monroe Street. When defendant's husband sought to locate the parents, she took the children away in his absence, though she knew what he proposed to do. The fact that defendant had the children on the public streets during part of the time does not conclusively show a lack of concealment or imprisonment when weighed in the light of all the other evidence in the case. We conclude that the judgment is sustained by the evidence.

Defendant contends that she was not accorded a fair trial because the court made a private investigation outside of the trial and received evidence from witnesses unknown to defendant whom she had no opportunity to confront. This contention stems from certain remarks made by the trial judge during the course of the trial. Defendant in her testimony admitted taking the children but denied she had any intention of harming them. The court then said: "You know these children were taken to a hospital." Defendant replied in the affirmative but said that she had not touched the children and denied molesting them in any

way. The court then said: "This one is under doctor's treatment." Defendant argues that since no witness testified that the children were taken to a hospital or were under a doctor's treatment, the remarks indicate a private investigation by the court outside the trial which was prejudicial to defendant.

This court has repeatedly said that the deliberations of the trial judge are limited to the record made before him in open court; that the defendant in any criminal proceeding has a constitutional right that all proceedings against him shall be open and in his presence, and that a private investigation by the court constitutes a denial of due process. (*People* v. *Thunberg,* 412 Ill. 565; *People* v. *Rivers,* 410 Ill. 410; *People* v. *Cooper,* 398 Ill. 468; *People* v. *McGeoghegan,* 325 Ill. 337.) Defendant relies principally upon the decisions in the *Thunberg* and *Rivers cases.* In the *Thunberg case* the defendant was charged with the crime against nature and rape of a female under the age of sixteen years. The record affirmatively showed that the judge before whom the case was heard without a jury had privately read a confession obtained from one of the defendants which was not offered in evidence and that he had talked with the prosecutrix and another witness out of the presence of the defendant. In the *Rivers case* where the charge was murder, the court, at the conclusion of the evidence, recommended that under the evidence the defendants should be charged with a lesser offense. The case was then adjourned for two months. When the hearing was resumed, the court, without hearing further testimony, said that the evidence disclosed a "cold-blooded, premeditated killing." His further remarks indicated that he had been influenced by the general prevalence of teen-aged killings and by figures as to the number of unregistered guns in the city of Chicago, which had been furnished to him by the State's Attorney. This court concluded that the record showed a private investigation out of the presence

of the defendants; that it was not a case where guilt was conclusively proved by other evidence, and reversed the convictions.

We do not believe that the record in the case before us establishes that the trial judge made a private investigation outside the hearing. The record shows that both children were present during the trial and that the case had been continued from the original date set for trial. The hospitalization and medical treatment of the children may properly have come to the attention of the court in fixing the date for trial. The remarks of the court were elicited by a statement made by the defendant in the course of her testimony and concerned matters about which she had appeared to be informed. She had an opportunity at the trial to establish the facts or to rebut any unfavorable inferences arising from them if she deemed the matter important. While we do not minimize the principles announced in our earlier decisions, we do not feel that defendant has established prejudicial error.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*