(No. 40480.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* VERNON RHODES, Appellant.

*Opinion filed January 29, 1969.*

WARD, J., took no part.

496

GEORGE C. HOWARD, EDWARD M. GENSON, and SAM ADAM, all of Chicago, appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JAMES B. HADDAD, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Defendant, Vernon Rhodes, together with Alfred Armstrong, Andrew Hale, and Jerry Sumlin, was charged in a four-count indictment with the murder of Claude M. Fisher, on April 19, 1966. Pre-trial motions for a severance and to suppress evidence were denied by the trial court. The defendant was found guilty by a jury and sentenced to imprisonment in the penitentiary for a term of 50 to 100 years. On this appeal, he contends that he was not proved guilty beyond a reasonable doubt and alleges certain violations of his constitutional rights.

On April 19, 1966, three robberies occurred within a short time, in the same geographic area of Chicago. Emil Misiumas was robbed by three men at his tavern at 2419 West Marquette Road. Later, Misiumas identified Armstrong and Sumlin as two of the men who had robbed him. He could not identify the third man, but he testified that the robbers possessed a shotgun at the time. Shortly after the Misiumas robbery, Walter Powell was robbed as he tended bar at 2822 West 67th Street. The robbers had a shotgun and stole a .38 caliber pistol from the tavern. Powell identified defendant Rhodes as the man who took the pistol and identified Armstrong and Sumlin as the companions of Rhodes. Immediately thereafter, three men entered O'Riley's Pub at 4622 South Western Street. They announced a hold-up and then fatally shot Claude Fisher, a patron, as he reached for his police revolver. The bar-

tender, Ann O'Donnell, and John Auskalms, another customer who witnessed the shooting, identified Rhodes, Armstrong and Sumlin as being present. Rhodes had stood behind the other two in an alcove by the tavern door.

Alvin Adams, after having been granted immunity by the prosecution, testified that Rhodes, Armstrong, Sumlin and a man named Hale had borrowed his car on the evening that the above robberies occurred. When they returned, Armstrong had been wounded, Rhodes had a shotgun and a pistol was also present. Rhodes told Adams that Armstrong had shot a man who probably was a policeman.

A shotgun, pistol and cased items of liquor were found in the home of Armstrong pursuant to a search on the afternoon of April 19, 1966. The pistol had fired one of the bullets found in the corpse of Claude Fisher. It was later identified as the gun that Rhodes had taken during the robbery of the second tavern.

The defendant, Rhodes, maintains that the search of the home of Armstrong was illegal since it was conducted by the police without a warrant while Armstrong was in custody at a police station. At the hearing upon the motion to suppress, the trial court sustained the validity of the search upon the basis that Armstrong had previously consented to the search; however the defendant insists that if consent were given, it was offered without knowledge of the constitutional rights involved, and is therefore ineffective as a matter of law. As we stated in *People* v. *Tedferd,* 38 Ill.2d 607, 610: "This court is not prepared to hold that the People must show under circumstances such as were concerned here, not only the consent by the defendant to the search, but also that he was advised of rights secured by the fourth amendment."

The defendant also contends that the trial court erred in failing to grant his motion for severance and a separate trial. To obtain a severance, a defendant must demonstrate prior to trial how he would otherwise be prejudiced. (*People*

v. *Ross, ante,* at p. 445.) In his petition for severance the defendant alleged as a reason that the co-defendants had confessed to the police and that their defense was antagonistic to his. The co-defendant's confessions were suppressed thus rendering moot the first allegation. The defendant supports his second allegation by arguing that physical evidence and testimony relative to his co-defendant's guilt were introduced and unduly prejudiced his case. However, he is now arguing matters which were first raised in his post-trial motions. Such motions are irrelevant and no substitute for pre-trial demonstration of why justice demands a severance. It is our opinion that the joinder of the related prosecutions was not prejudicial to the defendant's respective rights and that the motion for severance was properly denied. *People* v. *Wilson,* 29 Ill.2d 82.

It is next argued that defendant was not properly identified and proved guilty beyond all reasonable doubt. He claims that his conviction was not sustained by the evidence beyond all reasonable doubt since the testimony of the two eyewitnesses was vague, doubtful and uncertain. He specifically argues that he was allegedly seen under poor lighting conditions and for very short periods of time. Where the *corpus delicti* is established, positive identification by even one eyewitness will suffice. (*People* v. *Ashley,* 18 Ill.2d 272.) Here, there were two eyewitnesses and considerable corroborative evidence.

In resume, the defendant borrowed a car and left with the three co-defendants. The co-defendants were identified by four witnesses as having robbed three taverns within a short time, in the same geographic area. Defendant Rhodes was identified as the man who took the murder weapon from one tavern before arriving at the murder scene. Two witnesses identified him as being present at the fatal shooting. He returned with a wounded co-defendant, a shotgun, a pistol, a bloody car and a story about the shooting of a

police officer. This evidence was entirely sufficient to sustain the verdict.

The defendant next argues that the trial court gave improper instructions and then compounded the error by refusing to instruct the jury in accordance with his theory of the case.

Defendant's Instruction No. 1 was properly refused. It stated in essence that the defendant's good reputation for peace and quiet in his community could, along with other facts, if proven, create a reasonable doubt of the defendant's guilt in the minds of the jury. Such an instruction should speak of "character" and not repeatedly single out "reputation for peace and quiet." The instruction essentially stated that proof of a good reputation could by itself create a reasonable doubt as to the defendant's guilt, which is improper. *People* v. *Jolliff*, 31 Ill.2d 462.

The trial court also properly refused to give defendant's Instruction No. 4 on eyewitness identification. In the present case there were eyewitness identifications of all three defendants. However, the instruction spelled out the name of Vernon Rhodes seven different times in capital letters, in effect amounting to judicial comment on the strength of the identifications and failing as a neutral principal of law.

Defendant's Instruction No. 11 stated in effect that if the testimony in the case supported two theories, one of guilt and one of innocence, then the jury should adopt the theory of innocence. Such an instruction is proper only when the opposing theories arise out of the same facts. Where the defense is that the defendant did not participate in the alleged crime, it is proper to refuse such an instruction. *People* v. *Lefler*, 38 Ill.2d 216.

The defendant's remaining instructions on presumption of innocence and reasonable doubt were also properly rejected by the trial court. These subjects were adequately covered by the court's Instruction No. 4. Where one in-

struction fairly states the law, similar instructions constitute repetition which is to be avoided. *People* v. *Stevens,* 11 Ill.2d 21.

The defendant complains that the sentence imposed is unduly severe and suggests that it be reduced. We are of the opinion that the court did not abuse its discretion. See *People* v. *Taylor,* 33 Ill.2d 417; *People* v. *Nelson, ante,* at p. 364, adopted November 1968 Term.

While not specifically raised by defendant, there was admitted in this joint trial a statement by Sumlin to Adams that Armstrong had shot a man. As we observed in *People* v. *Rosochacki, ante,* at p. 483, decided this term, in referring to *Bruton* v. *United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620," "the extrajudicial confession of the accomplice which inculpated defendant had been secured in violation of the *Miranda* standards, [citation], and, on a retrial, that accomplice had been acquitted. The Supreme Court was therefore faced with the somewhat anomalous situation of a defendant who stood convicted largely as the result of an accomplice's confession which was not admissible against the accomplice who had, in fact, been found not guilty. The other evidence against the defendant was not persuasive as was noted by the Supreme Court in quoting from the Solicitor General's memorandum: '* * * the other evidence against [Bruton] is not strong'. (391 U.S. 123, 20 L. Ed. 2d 476, 479, 88 S. Ct. 1622.) Bruton had made no inculpatory statements, and the Supreme Court noted: 'Plainly, the introduction of Evans' confession added substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination, since Evans did not take the stand.' 391 U.S. 123, 20 L. Ed. 2d 476, 480, 88 S. Ct. 1623."

Here the statement of Sumlin could not have prejudiced defendant or deprived him of any constitutional right. Defendant had made a similar admission to Adams which was introduced in evidence against defendant and there was sub-

stantial evidence aside from this admission to support defendant's conviction. Under these circumstances defendant was not deprived of any constitutional right.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.