THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN LEONORA, Defendant-Appellant.

Second District   No. 83—1053

Opinion filed March 26, 1985.—Rehearing denied June 3, 1985.

Robert A. Novelle, of Serpico, Novelle, Dvorak & Navigato, of Chicago, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko, Cynthia N. Schneider, and Andrea Becker, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCHNAKE delivered the opinion of the court:

The defendant, John Leonora, was charged by indictment with the reckless homicide of Earl and Elizabeth Blake (Ill. Rev. Stat. 1983, ch. 38, par. 9—3). The charges arose out of a motor vehicle accident which occurred on Illinois Route 22 just west of Interstate Route 94 (I-94) in Lake County. Following a jury trial, the defendant was convicted of those offenses and sentenced to two concurrent three-year terms of imprisonment. He appeals, contending (1) that the trial court improperly excluded evidence of other accidents that had occurred at the location involved, and of safety measures concerning the roadway taken after the accident involved herein; (2) that the trial court committed various errors regarding the jury instructions and verdict forms as they related to different counts of the indictment, and that

these errors were compounded by improper closing argument by the prosecutor; (3) that he was not proved guilty beyond a reasonable doubt; (4) that the jury was improperly instructed concerning circumstantial evidence; and (5) that the concurrent three-year sentences of imprisonment are excessive and the result of the trial court's consideration of improper factors.

The motor vehicle accident involved here took place on November 11, 1982, at about 11 p.m. The defendant was driving his car, a green Dodge, westbound on Route 22. There was one passenger in his car, Bryan Beauchamp. Earl and Elizabeth Blake were proceeding eastbound on Route 22 in their silver Datsun.

Interstate Route 94 passes underneath Route 22. An exit ramp from the interstate intersects Route 22 from the north. At that intersection Route 22 has two lanes for traffic in both directions. As one proceeds west on Route 22 from that intersection, the westbound lane on the right merges into the one on the left. The pavement in the right lane continues a short distance after the merger as an acceleration-deceleration lane for two private drives. The paved portion on the right then becomes a gravel shoulder.

On the date in question Route 22 was in the process of being resurfaced. Because of the road construction there was no white line on the pavement to mark the northern edge of the westbound lanes as they merged together. There was, however, a sign on the westbound side of Route 22 two-tenths of a mile east of that point, warning of the lane merger ahead. New pavement had been laid on the eastbound lanes, but not on the westbound lanes. As a result, at the center of the roadway there was a one-inch rise in the pavement as one crossed from the westbound into the eastbound lanes.

At the time of the accident it was dark. There were no street lights in the area of the collision. The State presented testimony, however, from people who had driven westbound past that area that night to the effect that they could discern the border between the pavement and the gravel shoulder by the light from their headlights. Although it was not raining at the time of the collision, the road was wet from rains earlier that night.

Leonora, proceeding westbound, passed on the right a car being driven by Craig Sinclair, which had just turned onto the westbound portion of Route 22 from the I-94 exit ramp. At the time Leonora's car began to pass it, the Sinclair car, a Ford Fairmont, was traveling 30 to 40 miles per hour. The speed limit was 45 miles per hour. Jilayne Sinclair, Craig's mother, who was riding in the back seat of the car, testified that after the defendant's car had passed their car, the

defendant's car was traveling at 40 to 50 miles per hour. The evidence was in conflict on the question of at what point on Route 22 Leonora began to pass the Sinclair car. The testimony of Craig Sinclair and his brother Cory, who was sitting in the front passenger seat, indicated that when Leonora began to pass their car, the acceleration-deceleration lanes had already ended, and that Leonora pulled directly onto the gravel shoulder. On the other hand, Bryan Beauchamp, the defendant's passenger, who stated that he had been drunk at the time, testified that the road turned from pavement to gravel after the defendant had already pulled up on the right of the Sinclair car.

In any event, after the defendant's car had pulled in front, it drove back onto the paved portion of Route 22. Craig Sinclair testified that when the defendant's car was driven back onto the pavement, it swerved into the eastbound lane, then back into the westbound lane, and then back into the eastbound lane, where it collided with the Blake vehicle. Cory stated that after it pulled onto the pavement, the defendant's car "fishtailed," *i.e.*, the back of the car swerved back and forth into the different lanes prior to the collision in the eastbound lane. Jilayne Sinclair said that the car fishtailed in its own lane and then crossed into the eastbound lane, where the collision occurred. Finally, Beauchamp testified that when the defendant turned left onto the pavement, he tried to turn right to straighten the car out, but it slid into the eastbound lane where the collision occurred. Skid marks were found going from the westbound into the eastbound lane. The evidence indicated that the Blakes' car had been proceeding eastbound in the proper lane at about 35 miles per hour prior to the collision.

The evidence was conflicting on the question of whether the defendant was intoxicated at the time of the accident. He, along with Beauchamp, had spent part of the evening prior to the accident at the house of a friend, Lisa Baruffi. They arrived there about 7 p.m. Baruffi stated that the three of them drank beer at her house. She was asked how much she saw the defendant and Beauchamp each drink, and she replied, "I didn't see them—I wasn't looking at them the whole time while they were drinking. I know there was about two 6-packs." On cross-examination Baruffi acknowledged that she could not verify that the defendant even finished one bottle of beer. Baruffi stated that at about 8 p.m. she, the defendant, and Beauchamp went to a tavern called Gus and Roman's. According to Baruffi, on the way there each of the three of them drank a beer. On cross-examination, Baruffi acknowledged that she could not verify that the defendant fin-

ished the beer he was drinking in the car. Baruffi stated that the defendant and Beauchamp left the tavern without her at about 10:30 or 11 p.m. While they were there they shared three pitchers of beer with her. Again on cross-examination, Baruffi stated that she was not watching the defendant every minute, and that she could not verify that he had drunk more than a half a glass out of the three pitchers. Baruffi did testify, however, that in her opinion, when the defendant left the tavern, he was drunk. She also was drunk. On cross-examination she testified that she did not see the defendant stagger that night, and that his speech was not slurred. She based her opinion that the defendant was drunk on the amount of beer that they had ordered, and on the way he was acting. She had known the defendant for five years. Baruffi was impeached with a statement she gave to an investigator to the effect that the defendant had had nothing to drink while she was with him that evening. She said she gave that statement in order to protect the defendant. Baruffi was also impeached with a statement she made before the grand jury to the effect that she and her companions were not drinking in the car on the way to Gus and Roman's. She said that she did not remember that fact at the time.

Bryan Beauchamp told a different story. According to Beauchamp, on the way to Baruffi's the defendant "had a few sips" from a beer Beauchamp was drinking. He stated that the defendant did not drink anything at Baruffi's house. The three of them left her house at about 7:15 p.m. and went to Gus and Roman's, arriving at about 8 p.m. Nothing was drunk in the car on the way there. When they arrived, Beauchamp ordered two pitchers of beer, and all three of them began to drink. Beauchamp stated that when he completed "his" pitcher, the defendant had half of "his" left. By that time Baruffi was socializing with other people. Beauchamp testified that he then "downed" the remainder of the defendant's pitcher and left him at the table in order to visit with a girl at the bar. At that point, it was about 8:45 p.m. Beauchamp did not see the defendant have anything else to drink that evening. At about 10:55 p.m. Beauchamp, the defendant and Baruffi went to another bar. Baruffi was admitted, but the defendant and Beauchamp were not allowed in, presumably because they were under 21 years of age. They left to go home shortly thereafter. The accident occurred while they were driving home. Beauchamp estimated that the pitchers at Gus and Roman's held about four 10-ounce glasses. He testified that in his opinion the defendant did not have very much to drink. He was impeached with a statement he made to a police officer after the accident to the effect that the defendant had been drinking

quite a bit. Finally, Beauchamp expressed his opinion that the defendant was not intoxicated on the night in question, although he (Beauchamp) was.

The paramedics who arrived at the scene of the collision testified that they detected the odor of alcohol on the defendant's breath.

Officer Richter of the Lincolnshire police department testified that he interviewed the defendant on the night of the accident in the emergency room at Highland Park Hospital at about 2 a.m. The defendant was lying on a stretcher. He had numerous lacerations on his face, and his right ankle was broken. Richter asked the defendant what happened in the accident, and he replied that he could not remember, and that Richter should ask Beauchamp. Richter testified that he detected a strong odor of alcoholic beverage on the defendant's breath. He said that the defendant's eyes were glassy, and that he was swearing and complaining a lot about the pain he was in and about the fact that nobody was doing anything for him at the hospital. Richter said that the defendant kept trying to sit up. The defendant consented to give the police a blood sample, but the doctor on duty told Officer Richter that he would not take the sample because the defendant was going to be transferred to Alexian Brothers Hospital in Elk Grove Village. Richter expressed his opinion that, at the time of his interview with the defendant, the latter was under the influence of intoxicating liquor. The defendant did not arrive at Alexian Brothers Hospital until 5:15 a.m. A blood sample was taken from the defendant shortly thereafter which showed that there was no alcohol in his blood at that time. Pursuant to a motion *in limine* by the defendant, the State was precluded from calling an expert witness to testify concerning the rate that alcohol is eliminated from the body.

The defendant maintains that the trial court improperly excluded evidence of other accidents that occurred at the location involved, and of safety measures concerning the roadway taken after the accident involved herein. Prior to trial, the State filed a motion *in limine* to preclude the defense from introducing such evidence. At the hearing on that motion, defense counsel indicated that he had found out about an accident three years prior to the one involved here "where a truck crossed over the yellow line in a similar fashion to the way [the defendant's] car crossed over the yellow line, and there was a double fatality in an almost identical accident at that identical spot." He said that he had access to the police reports concerning that accident. Defense counsel also had a computer printout from the Illinois Department of Transportation (IDOT) which listed accidents which had occurred at the location involved since 1980. The printout showed the

time of day of each accident as well as the weather conditions. Defense counsel also had evidence that after the accident involved here three signs with arrows on them had been placed at the edge of the westbound portion of Route 22 where the road narrows as an additional warning to approaching motorists of the lane merger. The trial court granted the State's motion *in limine* and excluded this evidence.

▪ The defendant maintains that evidence of prior accidents should have been admitted to show that the road was unsafe. The dangerous condition of the road was relevant, he maintains, to the question of whether he was reckless, and whether such recklessness was the proximate cause of the accident and the death of the Blakes. Evidence of prior accidents occurring under substantially similar conditions may be admitted to show that the common cause of such accidents was a dangerous condition. (*Newton v. Meissner* (1979), 76 Ill. App. 3d 479, 394 N.E.2d 1241; *Linneen v. City of Chicago* (1941), 310 Ill. App. 274, 34 N.E.2d 100.) The admissibility of such evidence, however, is a matter for the exercise of the sound discretion of the trial judge, and his decision will not be reversed in the absence of an abuse of discretion. (*Johnson v. Amerco, Inc.* (1980), 87 Ill. App. 3d 827, 409 N.E.2d 299.) One factor properly considered by the trial judge is the potential of such evidence for diverting the jury's attention from the occurrence at issue, and for confusing the issues. *Johnson v. Amerco, Inc.* (1980), 87 Ill. App. 3d 827.

In the instant case neither the police reports of the accident in November of 1979 nor the computer printout from IDOT were made a part of the record on appeal. It is the responsibility of the appellant, here the defendant, to properly preserve the record of the proceedings before the trial court. (*People v. Edwards* (1978), 74 Ill. 2d 1, 383 N.E.2d 944, *cert. denied* (1979), 442 U.S. 931, 61 L. Ed. 2d 299, 99 S. Ct. 2862.) What is clear from the record is that the facts of the prior accidents would have been contested by the parties. The prosecutor stated during argument on this question, "Certainly no other situation was duplicated in terms of time and in terms of traffic, in terms of weather, in terms of lighting." Under these circumstances, where the record is incomplete with respect to the specific circumstances of the prior accidents, and where it is clear that such circumstances would have been carefully challenged by the parties, diverting the jury's attention from the accident at issue, we can find no abuse of discretion in the trial court's decision to exclude the evidence of prior accidents.

▪ The defendant maintains that evidence of safety measures concerning the roadway taken after the collision involved herein was

relevant to show "contributory negligence on the part of the *** roadway authority," resulting in unsafe conditions. The law in Illinois is to the contrary. As stated in *Lundy v. Whiting Corp.* (1981), 93 Ill. App. 3d 244, 252, 417 N.E.2d 154:

"The established rule in this State is that post-occurrence changes are not admissible to prove negligence. [Citation.] The rationale for this long-standing rule is twofold: correction of unsafe conditions should not be deterred by the possibility that such an act will constitute an admission of negligence, and, more fundamentally, a post-occurrence change is insufficiently probative of prior negligence, because later carefulness does not necessarily imply prior neglect."

The defendant has cited and extensively discussed four cases which, he contends, support his position. Suffice it to say that in none of those cases was the question of the admissibility of post-accident precautionary measures raised on appeal.

■■ ■ The defendant next raises various issues regarding the jury instructions and verdict forms as they related to the different counts of the indictment. The indictment against the defendant consisted of four counts of reckless homicide, two counts pertaining to each of the decedents. One count with respect to each decedent alleged, as acts of recklessness on the defendant's part, that he passed the Sinclair car on the right on a gravel shoulder and then crossed the center line into the eastbound lane of traffic. The other counts were identical except that they added the allegation that the defendant was under the influence of alcohol at the time. The jury was not given special verdict forms relating to each of these two theories of prosecution, but rather was given general verdict forms with respect to each victim of guilty or not guilty of reckless homicide. The defendant maintains that, excluding the evidence of intoxication, there was insufficient evidence to convict him of reckless homicide, and that convictions under the counts that did not allege driving under the influence could not be sustained. He argues that because the verdicts returned by the jury were general verdicts of guilty, it cannot be determined whether the jury's finding of guilt related to the counts charging driving while under the influence or not. Under these circumstances, he contends, the convictions cannot stand.

We disagree. First we note that the defendant did not object to the use of the general verdict forms, notwithstanding that the question of special versus general verdict forms had been discussed previously during a conference in chambers regarding the *voir dire* of the jury. It is the law in this State that a general finding of guilt is pre-

sumed to be based on any good count in the indictment to which the proof was applicable. (*People v. Savage* (1955), 5 Ill. 2d 296, 125 N.E.2d 449.) Where a general finding of guilt is made, and there is sufficient evidence under an adequate count of the indictment, the reviewing court need not consider the sufficiency of the evidence under the other counts in order to affirm the judgment of conviction. (*People v. Savage* (1955), 5 Ill. 2d 296, 301, 125 N.E.2d 449; *People v. Collins* (1979), 71 Ill. App. 3d 815, 824, 390 N.E.2d 463.) Because, as we conclude below, there was sufficient evidence presented to convict the defendant under the counts alleging driving under the influence of alcohol, we need not consider the sufficiency of the evidence under the other counts.

The cases cited by the defendant on this point are inapposite. In *People v. Swinson* (1950), 406 Ill. 233, 92 N.E.2d 758, our supreme court reversed the defendant's conviction because it could not be determined from the general verdict of guilty what offense the defendant had been found guilty of, grand larceny or petit larceny. Each offense was punished differently. The general verdicts in the instant case do not create a similar ambiguity. They clearly indicate that the defendant was found guilty of reckless homicide.

In *Williams v. North Carolina* (1942), 317 U.S. 287, 87 L. Ed. 279, 63 S. Ct. 207, and *Stromberg v. California* (1931), 283 U.S. 359, 75 L. Ed. 1117, 51 S. Ct. 532, the United States Supreme Court reversed the convictions involved because, under the general verdicts returned in those cases, the legal bases for the convictions could have been unconstitutional. In the instant case it is not the legal, but the factual basis of the conviction under one of the counts of the indictment which the defendant maintains was insufficient. The rule of *Williams* and *Stromberg* is not applicable under these circumstances, at least where the defendant did not object to the use of general verdict forms. See *United States v. Outpost Development Co.* (9th Cir. 1977), 552 F.2d 868, *cert. denied* (1977), 434 U.S. 965, 54 L. Ed. 2d 450, 98 S. Ct. 503.

■ The defendant next contends that because, excluding the evidence of intoxication, there would have been insufficient evidence to convict, the jury should have been instructed that "drunk driving" was a necessary element of the charge. The record reflects that the jury was given Illinois Pattern Jury Instructions, Criminal, Nos. 7.09 and 5.01 (2d ed. 1981), which define reckless homicide and the term "recklessly." The jury was also given two versions of IPI Criminal 2d No. 7.10, which set forth for each of the decedents the issues in a reckless homicide prosecution. The defendant made no objection to

any of these instructions, nor did he tender the instruction that he now complains should have been given. Moreover, this issue was not raised in the defendant's post-trial motion. Accordingly, this issue is waived. *People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248.

The defendant urges us to consider the issue under Supreme Court Rule 451(c), which provides, in pertinent part, that "substantial defects [in the jury instructions] are not waived by failure to make timely objections thereto if the interests of justice require." (87 Ill. 2d R. 451(c).) Our supreme court has emphasized the limited nature of this plain-error exception to the waiver rule. The exception is restricted to the correction of "grave errors," or to situations where the case is close factually and fundamental fairness requires that the jury be properly instructed. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248.) The defendant in the instant case is not complaining that the jury was not apprised of all of the elements of the offense as defined by statute. (*Cf. People v. Ogunsola* (1981), 87 Ill. 2d 216, 429 N.E.2d 861 (jury not instructed that intent to defraud was an element of deceptive practices).) Here, the two versions of IPI Criminal 2d No. 7.10 informed the jury that, as to each decedent, the State was required to prove beyond a reasonable doubt that the defendant caused the death by driving a motor vehicle, that he drove the motor vehicle recklessly, and that he drove it in a manner likely to cause death or great bodily harm. The term recklessly was defined by IPI Criminal No. 5.01. What the defendant is really complaining about is that the trial court did not inform the jury what particular evidentiary facts at issue in the case could sustain a finding of one of the statutory elements. (See *People v. Boyle* (1979), 78 Ill. App. 3d 791, 396 N.E.2d 1347.) If this omission was error, it does not strike us as a "grave error" nor one affecting the fundamental fairness of the proceeding. We will not create a rule that the trial court in a criminal case must *sua sponte* sift through the evidentiary facts and inform the jury which combination thereof can support a finding beyond a reasonable doubt of each element of the offense.

■ The defendant next contends that the prosecutor improperly stated during closing argument that the proceeding was not a drunk-driving case, and that the State "did not have to prove the defendant guilty of intoxication or that his drinking at all contributed to the accident." We believe that the defendant's characterization of the prosecutor's argument is incorrect. The prosecutor did state that the proceeding was not a drunk-driving case, which, of course, was true. But he did not say that the State did not have to prove that the defendant's drinking at all contributed to the accident. He stated:

"We don't have to prove that he was drunk, only that we were alleging that his intoxication contributed to the way he was driving on that evening; that his intoxication or his drinking of beer impaired his mental and physical abilities on that evening."

Later on the prosecutor stated:

"[T]he alcohol is only a contributing factor. Like I say, this is not a drunk driving case."

The defendant made no objection to these comments, nor did he explicitly raise this issue in his post-trial motion. Accordingly, this issue is waived. (*People v. Washington* (1981), 101 Ill. App. 3d 409, 428 N.E.2d 553.) Furthermore, we do not believe it would be appropriate to consider this issue under the plain-error exception to the waiver rule set forth in Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)). Although the prosecutor did argue that the State did not have to prove that the defendant was drunk, the prosecutor implied that the State did have to show that the defendant's beer drinking impaired his driving abilities and contributed to the accident. While it is difficult to discern the distinction the prosecutor was attempting to draw, we believe that his comments, considered in context, if erroneous, did not affect the defendant's substantial rights. See *People v. Jackson* (1981), 84 Ill. 2d 350, 359, 418 N.E.2d 739.

■ The defendant next argues that he was not proved guilty beyond a reasonable doubt. He reiterates his argument noted above that, excluding the evidence of intoxication, there was insufficient evidence to convict him. He essentially concedes that his act of passing the Sinclair's car on the right was negligent, and that improperly driving a motor vehicle while intoxicated may constitute reckless conduct which will convert what would otherwise be ordinary negligence into criminal conduct. (*People v. Davis* (1982), 105 Ill. App. 3d 129, 434 N.E.2d 13.) The defendant maintains, however, that the evidence was insufficient to prove that he was intoxicated.

We disagree. According to the testimony of Lisa Baruffi, from 7 p.m. until about 10:30 p.m. the defendant was socializing in places where beer was available to him. Until 8 p.m. he was at Baruffi's house, where there was a six-pack of beer, and from 8 p.m. until 10:30 p.m. he was in a tavern. Although Baruffi saw the defendant drinking beer in both places, as well as in the car on the way to the tavern, she could not state with certainty how much the defendant imbibed. She did express her opinion, however, that the defendant was drunk, based on the amount of beer he, Beauchamp, and Baruffi had ordered at the bar, and based on the way the defendant was act-

ing. She had known the defendant for five years.

Her opinion was corroborated by Officer Richter, who interviewed the defendant in the emergency room of Highland Park Hospital about three hours after the accident. Richter testified that even after that three-hour period, the defendant's breath smelled strongly of alcohol. Richter expressed his opinion that, at that time, the defendant was under the influence of alcohol. He based this opinion on his experience as a police officer, the odor of alcohol he detected, the defendant's glassy eyes, and "his attitude, everything."

The defendant argues that Baruffi and Richter had an insufficient basis for their opinions. We disagree. Baruffi had known the defendant for five years and had an ample opportunity to observe his behavior in the tavern prior to the accident. Officer Richter's observations of the defendant were more limited because he was on a stretcher in the emergency room, but Richter did have the opportunity to converse with the defendant and observe his swearing and complaining and his attempts to get up off of the stretcher. Although Baruffi did not observe the defendant stagger while trying to walk, and Officer Richter was not able to observe the defendant perform field sobriety tests, these factors are not essential to an adequate foundation for the admissibility of their opinions. See *Doria v. Costello* (1974), 22 Ill. App. 3d 505, 318 N.E.2d 40.

■ The defendant also points out that his other companion on the night in question, Beauchamp, gave his opinion that the defendant was not intoxicated. The defendant also notes that Baruffi was impeached with prior inconsistent statements. These matters, touching upon the weight of the evidence and the credibility of witnesses, were for the jury to consider. The defendant's contention that the State is bound by the testimony of Beauchamp is without merit. A party is not conclusively bound by the statements of a witness whom he has called, and may, as the State did here, call other witnesses to disprove such statements. (*Wisniewski v. Shimashus* (1961), 22 Ill. 2d 451, 176 N.E.2d 781.) A reviewing court may not substitute its judgment for that of the trier of fact on matters involving the weight of the evidence and the credibility of witnesses, and will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) Here there was credible evidence of intoxication which was sufficient to support the jury's verdicts. See *People v. Davis* (1982), 105 Ill. App. 3d 129, 132-33, 434 N.E.2d 13.

It would unduly lengthen this opinion to discuss the numerous

cases that the defendant has cited on this point. Suffice it to say that we have carefully considered them and find them to be factually inapposite.

■ The defendant's next contention is that the jury was improperly instructed concerning circumstantial evidence. Over the defendant's objection the jury was given IPI Criminal 2d No. 3.02, without the second paragraph. As given the instruction stated:

"Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of the defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict."

The second paragraph of IPI Criminal 2d No. 3.02, which was omitted over the defendant's objection, states:

"You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence."

The second paragraph is to be given when proof of guilt, as to each element of the offense, is circumstantial. (*People v. Evans* (1981), 87 Ill. 2d 77, 429 N.E.2d 520.) One of the elements of reckless homicide is driving a motor vehicle in a manner likely to cause death or great bodily harm to some individual. (Ill. Rev. Stat. 1983, ch. 38, par. 9—3.) Here there was direct evidence of that element of the offense, consisting of the testimony of the Sinclairs regarding their observation of the defendant's driving prior to and during the fatal collision. (See *People v. Gray* (1972), 7 Ill. App. 3d 526, 288 N.E.2d 26.) Accordingly, the second paragraph of IPI Criminal 2d No. 3.02 was properly omitted.

■ The defendant's final contentions concern the two concurrent three-year sentences of imprisonment imposed. He first contends that the trial court considered improper factors in deciding that these sentences were appropriate. One of these allegedly improper factors was that the defendant did not have liability insurance. The trial judge explicitly held that he would not consider that factor. The defendant also refers to a portion of the prosecutor's argument on sentencing alternatives regarding the victims' family. It is presumed that a trial judge disregards incompetent matters presented at a sentencing hearing unless the record indicates the contrary. (See *People v. Beyah* (1981), 102 Ill. App. 3d 434, 430 N.E.2d 83.) Here, the defendant made no objection to the allegedly improper argument, and there is no indication that it was considered by the trial court. The

defendant maintains that the trial judge concluded that he acted in a fit of anger in driving his car without any evidence to support such a finding. The record, however, does not indicate that the court drew such a conclusion. In the course of pronouncing sentence the trial judge stated that "maybe" the reason that the defendant drove recklessly was that he was angry at Lisa Baruffi for paying attention to other young men. There is no indication that this offhand speculation played any part in the sentencing determination. Finally, we believe that the other factors referred to by the defendant, *viz.*, that he was driving too fast for conditions; that he disregarded weather and road conditions; and that he was "out of control" on the night in question, were supported by the evidence and, therefore, properly considered.

The defendant's final contention is that the sentences are excessive given the facts of the case and his background. It is well settled that the trial court is normally the proper forum in which the sentence is to be determined, and its decision should not be reversed in the absence of an abuse of discretion. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) We have carefully considered all of the evidence bearing on the sentencing question, including the defendant's good prior record, as well as the manner in which his reckless conduct took the lives of two people, Earl Blake, age 65, and his wife, Elizabeth Blake, who was 57 years old. Although the three-year sentences of imprisonment were the maximum permissible under the applicable statutes (Ill. Rev. Stat. 1983, ch. 38, pars. 9—3, 1005—8—1), we find no abuse of discretion under the circumstances. Accordingly, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

HOPF and REINHARD, JJ., concur.