THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES HOUSE, Defendant-Appellant.
First District (4th Division)   No. 1—87—2296

Opinion filed May 3, 1990.

JOHNSON, J., dissenting.

Fritzshall & Gleason, of Chicago (Steven N. Fritzshall, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Joseph G. Howard, and Brian T. Sexton, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

Following a jury trial, defendant James House was convicted of reckless homicide (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a)) and sentenced to three years' imprisonment. On appeal, defendant argues that: (1) the State's evidence was insufficient to prove him guilty beyond a reasonable doubt; (2) the trial court committed reversible error when it excluded defendant's proffered evidence regarding his reputation for truth and veracity, and his reputation for lack of recklessness; (3) the jury instructions given by the trial court were reversible error; (4) the trial court's remarks during the course of the trial created a prejudicial atmosphere that deprived defendant of a fair trial; and (5) the sentence imposed by the trial court was excessive. We affirm.

Defendant was convicted for driving a vehicle on a public street in the City of Chicago in such a reckless manner that he struck and killed Tina Abdullah (Abdullah) on December 10, 1985. Evidence presented at trial established that on the date of the incident, defendant was driving his automobile northwest on South Chicago Avenue. He stopped at a red light, at the well-lit intersection of 79th Street, Stony Island Avenue, and South Chicago Avenue, in the lane of traffic designated for left-hand turns only. It was approximately 6:30 p.m., the weather was foggy and rainy, and the area was congested with pedestrian and vehicular traffic. As the light at the intersection turned green, defendant did not make a left-hand turn, but proceeded directly into the intersection and cut in front of the vehicle which had been stopped to his right at the intersection. This vehicle was being driven by Gilberto Alvarez (Alvarez), who testified at trial that defendant drove at an excessive rate of speed into the intersection and cut in front of Alvarez' car in order to drive in Alvarez' lane of traffic. Alvarez testified that as defendant cut in front of him, Alvarez saw "a body in the air." Alvarez followed defendant's car as defendant sped down South Chicago Avenue, obtained the vehicle's license plate number, and then returned to the scene, where he gave the license plate number to Chicago police officers.

Defendant testified at trial that he did not recall being in the left-hand turn lane at the intersection shortly before the incident. He testified that he drove at a normal rate of speed directly across the intersection in his own lane of traffic and that, as he reached the end of the intersection, he "heard a loud thump" but saw nothing. Defendant stated that he believed that someone had thrown something at his car, since the immediate area was a gang hangout. Defendant continued to his intended destination and was arrested when he returned

home approximately five hours later. According to defendant, it was at this time that defendant learned he had hit a pedestrian, Abdullah, who had been standing near the corner.

The medical examiner testified at trial that Abdullah died of multiple injuries by vehicular homicide. An evidence technician who examined defendant's vehicle testified that there was damage to the fender, bumper, and windshield on the driver's side of the car. Hair samples were removed from the fractured windshield. It was established at trial that the hair could have come from the victim and that glass in the victim's clothing matched the glass from the windshield of defendant's vehicle.

Based upon this evidence, defendant was convicted of reckless homicide and sentenced to three years' imprisonment. He now appeals.

▬▬▬ Defendant argues first that the evidence presented at trial was insufficient to prove him guilty beyond a reasonable doubt of reckless homicide. We disagree. "A person commits reckless homicide if he kills a person while driving a motor vehicle and the acts which caused death are such as are likely to cause death or great bodily harm to some individual and are performed recklessly." (*People v. Bonzi* (1978), 65 Ill. App. 3d 927, 931, 382 N.E.2d 1300.) "A person is reckless *** when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow *** and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." (Ill. Rev. Stat. 1985, ch. 38, par. 4—6.) Recklessness is inferred from all the facts and surrounding circumstances provided by the record. (*People v. Dunnegan* (1987), 151 Ill. App. 3d 973, 982, 503 N.E.2d 823.) In reviewing the jury's verdict, the evidence of record must be considered in the light most favorable to the State. *People v. Pintos* (1989), 133 Ill. 2d 286.

▬▬ Upon a proper review of the evidence and its reasonable inferences in a light most favorable to the State, we find the evidence sufficient to prove defendant guilty beyond a reasonable doubt of reckless homicide. The record shows that defendant stopped at a red light in a left-hand turn lane of a well-lit, busy intersection congested with cars and pedestrians at approximately 6:30 p.m. under wet and foggy conditions. As the light turned green, defendant accelerated his car to an excessive rate of speed, attempted to change lanes rather than make a left-hand turn, and ran into the victim with such force and violence that her head fractured his windshield and left fragments of hair and skin. Defendant, allegedly thinking that "something" had

hit his car, sped off. Courts of review faced with similar facts have not hesitated to affirm a conviction of reckless homicide on the ground that such circumstances were sufficient to prove the defendant guilty beyond a reasonable doubt. (See, *e.g., People v. Griffith* (1978), 56 Ill. App. 3d 747, 372 N.E.2d 404.) We find nothing distinguishable in the instant cause to reach a conclusion contrary to this precedent.

Defendant also contends that he should receive a new trial because the trial court erroneously prevented him from introducing reputation or character testimony to be given by his parish priest and employer. Defendant advances two grounds for the admissibility of reputation testimony on his behalf. First, defendant contends that his credibility, and therefore his reputation for truth and veracity, was put in issue by the State because the State presented evidence inconsistent with defendant's trial testimony and argued that the State's evidence should be believed by the jury. However, the record shows that the State never directly attacked the veracity of the testimony given by defendant at trial. The circumstance that defendant's testimony introduced in his own behalf, regarding the events which were the basis for his being charged with reckless homicide, differed from the testimony presented by the State's witnesses did not, in and of itself, justify reception into evidence of testimony regarding defendant's reputation for truth and veracity. (*People v. Griffith* (1978), 56 Ill. App. 3d 747, 756, 372 N.E.2d 404.) In addition, Illinois law is well established that defendant's reputation for truth and veracity has no bearing on any character trait involved in the offense of reckless homicide. (*Griffith*, 56 Ill. App. 3d at 756; see also *People v. Doll* (1984), 126 Ill. App. 3d 495, 501-02, 467 N.E.2d 335.) As a result, the trial court did not abuse its discretion when it excluded testimony offered by defendant regarding his good reputation for truth and veracity.

Defendant also maintains that his reputation for not acting in a reckless manner was an essential element of his defense to the charge of reckless homicide. However, the record shows defendant has waived the argument that the trial court abused its discretion in refusing to allow testimony regarding defendant's reputation for lack of recklessness. The trial transcript shows that, during the State's presentation of its case in chief, defendant initially informed the court that he wished to present reputation testimony regarding (1) his lack of recklessness and (2) his truth and veracity. The court responded that this evidence was inadmissible, because defendant's reputation for truth and veracity was not an issue in the charges for which he was being tried. The court also informed defendant that it would mod-

ify this ruling if defendant could present case law to support his position.

Thereafter, when defendant renewed his claim that he should be permitted to present reputation testimony, defendant argued only that he wished to present testimony regarding his reputation for truth and veracity. The court again stated its view that such evidence was inadmissible because defendant's reputation for truth and veracity was not an issue in the State's charges against him. Defense counsel then suggested that defendant's credibility would be placed in issue, because defendant intended to testify in his own behalf to circumstances and events surrounding the accident that were materially different than those recited by the State's eyewitness. The court found this an insufficient basis to permit reputation testimony on defendant's behalf regarding his truth and veracity.

The defendant's attorney then stated that he would make an offer of proof regarding the reputation testimony. The court responded that defendant would call his parish priest to "testify that the defendant has a general reputation in the community which he lives and works and is known for truth and veracity. Is that right?" Defense counsel replied, "Honesty and integrity, Judge. That's correct." Counsel then said, "In addition, Judge, the same I would assume the same ruling goes for Mr. House's employer, Miss Kelly. *** And we would in fact make the identical offer of proof as to Miss Kelly." The court replied, "All right."

■ The case at bar is similar to *People v. Cobb* (1989), 186 Ill. App. 3d 898, 542 N.E.2d 1171, in which the court stated:

"Generally, to preserve the issue of the wrongful exclusion of evidence for review, an offer of proof must be submitted. [Citation.] *** A detailed and specific offer of proof is necessary when it is not clear what the witness' testimony will be or his basis for so testifying. [Citation.] *** In the case at bar, defendant did not make an offer of proof. Defendant's counsel simply stated that he was prepared to call the police officer who investigated the prior incident to testify as to a character trait [of the victim] of violence or turbulence. This is wholly insufficient to preserve this issue for review. '[A]n informal offer of proof [by an attorney] which merely summarizes the witness' testimony in a conclusory manner is insufficient to preserve the error.' [Citation.] We have no way of determining exactly what the substance of the testimony was. Additionally, we do not know the basis of the officer's knowledge. The officer may have simply been recalling what other people had told him during his

investigation of the incident. This would, of course, be inadmissible hearsay. We cannot fully determine from the whole record whether excluding this undefined testimony was reversible error. [Citation.] Since defendant did not adequately tender an offer of proof, we find this issue to be waived." 186 Ill. App. 3d at 905-06.

■ Although the offer of proof in the instant case was supplied in part by the court rather than defense counsel, we conclude that the principles stated above from *Cobb* apply with equal force to the case at bar. There is nothing in the record to show that the trial court prevented defense counsel from making a complete and accurate offer of proof. The offer of proof made in the case at bar was merely an informal offer which summarized the witnesses' testimony in a conclusory manner. Because this offer of proof was inadequate, as *Cobb* indicates, we conclude that the defendant's claim has been waived.

Even assuming *arguendo* that the issue had been properly preserved and that the trial court erred in its ruling with respect to defendant's reputation testimony, we find that the excluded evidence was not sufficiently prejudicial to warrant a new trial. The State's evidence demonstrated that defendant proceeded at a high rate of speed across an intersection congested with pedestrian and vehicular traffic, under adverse weather conditions, in an attempt to change into an adjacent lane in front of oncoming traffic. Defendant's vehicle hit the victim, and the force of this impact fractured the windshield of defendant's car and left hair and skin particles from the victim. In view of the evidence, we cannot say that the trial court's exclusion of defendant's reputation testimony, regarding his lack of recklessness in the past, was so prejudicial that defendant should be accorded a new trial.

■ Defendant further asserts that he is entitled to a new trial because the court incorrectly instructed the jury. Initially, defendant maintains that the jury should have been instructed that "where acts or circumstances are attributable to either an innocent or criminal cause, the innocent hypothesis is to be adopted." It is well established that "the trial court should instruct the jury to adopt the hypothesis as to the factual occurrence which favors the innocence of the defendant where opposing theories as to guilt or innocence can arise out of the same facts." (*People v. DeHoyos* (1975), 31 Ill. App. 3d 12, 20, 332 N.E.2d 643, *aff'd* (1976), 64 Ill. 2d 128, 355 N.E.2d 19, citing *People v. Lefler* (1967), 38 Ill. 2d 216, 230 N.E.2d 827.) The theories of defendant's guilt or innocence in the case at bar did not rest upon the same facts. The testimony from Alvarez and defendant was contradic-

tory as to what transpired during the incident. Consequently, the instruction was properly refused. See *People v. Rhodes* (1969), 41 Ill. 2d 494, 244 N.E.2d 145; *People v. Starks* (1988), 169 Ill. App. 3d 588, 523 N.E.2d 983; *People v. Cannon* (1975), 25 Ill. App. 3d 737, 323 N.E.2d 846; *People v. Decker* (1974), 19 Ill. App. 3d 86, 311 N.E.2d 228; *People v. Mead* (1972), 3 Ill. App. 3d 565, 278 N.E.2d 15.

Defendant suggests that the jury should have been instructed "that defendant may have been guilty of negligence in the operation of his car at the time and place of the accident does not lead, necessarily, to the conclusion he was guilty of reckless homicide." Defendant asserts the jury also should have been informed that "criminal liability does not attach to every act of negligence resulting in injury, or even death, to another person, but only to negligence of such a reckless or wanton character as to show an utter disregard for the safety of others under circumstances likely to cause an injury." Defendant argues that the jury also should have been told that "a person acts recklessly when he consciously disregards a substantial and unjustifiable risk that circumstances exist that were likely to cause the death or great bodily harm to some individual, and such disregard constitutes a gross deviation from the care which a reasonable person would exercise in the situation."

Rather than instruct the jury according to defendant's proffered non-Illinois Pattern Jury Instructions (hereinafter IPI), the trial court gave the jury the standard IPI instructions, which provide as follows:

"A person commits the offenses of reckless homicide when he unintentionally causes the death of an individual by driving a motor vehicle recklessly and in a manner likely to cause death or great bodily harm."

"A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross departure from the standard of care which a reasonable person would exercise in the situation." See Illinois Pattern Jury Instructions, Criminal, Nos. 7.09, 5.01 (2d ed. 1981) (hereinafter IPI Criminal 2d).

The trial court also gave the jury the standard IPI instruction with respect to the elements of the offense of reckless homicide. IPI Criminal No. 7.10.

■■ In our view, the trial court clearly and accurately instructed the jury of the nature of the offense for which defendant was charged, and clearly and accurately informed the jury of the distinctions between ordinary negligence and criminal recklessness as appli-

cable to the instant cause. As a result, we find no abuse of discretion in the trial court's instructions to the jury in the case at bar. See, *e.g.,* *People v. Halliday* (1985), 139 Ill. App. 3d 500, 487 N.E.2d 993; *People v. Wolfe* (1983), 114 Ill. App. 3d 841, 449 N.E.2d 980.

■■■ ■ Defendant also contends that the trial court's remarks during the course of the trial created a prejudicial atmosphere that deprived defendant of a fair trial. We have reviewed the record and find that the court's statements were proper exercises of the court's discretion, causing no prejudice to the defendant. (See, *e.g., People v. Mahaffey* (1978), 60 Ill. App. 3d 496, 377 N.E.2d 85.) We also find no abuse of discretion in the three-year sentence imposed by the trial court in the instant cause. See *e.g., People v. Leonora* (1985), 133 Ill. App. 3d 74, 477 N.E.2d 1277.

Pursuant to the State's request and in accord with *People v. Nicholls* (1978), 71 Ill. 2d 166, and *People v. Agnew* (1985), 105 Ill. 2d 275, we hereby assess defendant $75 as costs for this appeal and incorporate it as part of our judgment.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

LINN, J., concurs.

JUSTICE JOHNSON, dissenting:

I respectfully disagree with the majority. I will limit my discussion to whether (1) the failure to allow defendant's character witnesses to testify constituted prejudicial error, and (2) the People proved beyond a reasonable doubt that defendant was guilty of reckless homicide. I find no merit in the other contentions raised on appeal.

The following facts are taken from the testimony adduced at trial. On December 10, 1985, in the afternoon, defendant drank two beers and took a nap before preparing to attend a party. In the early evening while driving to the party, defendant stopped at the red light just before the intersection of 79th Street, Stony Island Avenue, and South Chicago Avenue. Gilberto Alvarez and his passenger were also stopped at the light. The weather on that particular evening was foggy and rainy. Alvarez stated that defendant's automobile was stopped at the light, in the left-hand turning lane. After the light turned green, both cars proceeded into the intersection. About half-way into the intersection defendant did not make a left turn, but, instead, accelerated and changed lanes, cutting in front of Alvarez' car.

Alvarez further testified that he saw "a body in the air" at about the same time defendant swerved into his lane. Alvarez followed defendant's car and obtained the vehicle's license plate number and then returned to the scene of the accident. Defendant testified that he proceeded into the intersection at a speed of 25 or 30 miles per hour. He stated that he heard a loud thump and did not know what had hit his vehicle. He believed someone had thrown something at the vehicle, since the immediate area was a gang hangout. Thus, in fear, he did not stop to see what had occurred.

After defendant was notified that Chicago police officers were at his home looking for him, he immediately returned home. Officer James Jackson was parked at 1932 East 80th Street and observed defendant as he arrived home. Jackson testified that after approaching defendant, he detected the odor of alcohol on his breath. Defendant was placed under arrest and advised of his rights.

At the police station, defendant took a breathalyzer test, which revealed his blood alcohol to be .08. Hair samples were removed from the fractured windshield of his vehicle. An expert testified that the hair could have come from the victim. The expert also found glass in the victim's clothing which matched the glass from the windshield of defendant's vehicle. The medical examiner testified that the victim died of multiple injuries by vehicular homicide.

At the close of the People's case, defendant's motion for a directed verdict was denied. Defendant's motion to allow the character testimony of his parish priest and employer was also denied after the trial court found that defendant's reputation for truth and veracity was not at issue. A jury found defendant not guilty of driving under the influence of alcohol and guilty of reckless homicide.

A defendant in a criminal proceeding may provide "proof of such previous good character as is inconsistent with the commission of the crime with which he is charged." (*People v. Lewis* (1962), 25 Ill. 2d 442, 445; see *People v. La Fiura* (1981), 93 Ill. App. 3d 1099, 1104.) This proof is established by showing defendant's reputation for the specific character trait involved. (*Lewis*, 25 Ill. 2d at 445; *La Fiura*, 93 Ill. App. 3d at 1104.) Moreover, evidence of community reputation must be based on the witness' affiliation with defendant's neighbors and friends. (*People v. Kurena* (1980), 87 Ill. App. 3d 771, 778.) However, the trial court's determination concerning the competency to testify as a character witness will not be disturbed absent an abuse of discretion. *La Fiura*, 93 Ill. App. 3d at 1104.

The State concedes that a criminal defendant may present evidence of his general reputation in the community. However, the State

argues that the parish priest could only offer his personal opinion and not information concerning defendant's general reputation in the community. The State also argues that defendant's employer did not have any knowledge of his reputation in the community based on association with his friends and neighbors.

I am not persuaded by the State's arguments. Concerning the parish priest, it is more probable than not that he was familiar with defendant's general reputation in the community. The church, generally, is an integral part of the community where parishioners gather to converse on various matters. Therefore, the parish priest would more than likely have knowledge of defendant's reputation in the community. Furthermore, I am not convinced that defendant's employer could not have competently testified as to defendant's reputation in his community. The State's suggestion that the employer could only testify as to defendant's work reputation is speculative at best. Hence, I find that the trial court erred by not allowing the reputation testimony of defendant's witnesses.

Defendant also contends that he was not proved guilty of reckless homicide beyond a reasonable doubt. The State maintains that it has met its burden of proof by the evidence which revealed that defendant was driving recklessly, struck and killed the victim, eluded the police, and failed to report the incident to the police.

Under the facts and surrounding circumstances of the case at bar, I find that the State failed to prove defendant guilty of reckless homicide beyond a reasonable doubt. The facts, as presented by testimony at trial, established that on the night in question the weather was wet and foggy. Defendant stopped at a red light and proceeded into the intersection when the light turned green. Defendant did not see the victim at any time nor did any of the testifying witnesses. Although Alvarez' vehicle was adjacent to defendant's automobile, Alvarez testified that he did not see the victim until after she had been struck. Defendant stated that he heard a thump but did not stop because he believed that something had been thrown at his car. Furthermore, although defendant admitted drinking beer prior to the incident, the results of his breathalyzer and balance tests revealed that he was not legally intoxicated at the time of the incident. The court also found him not guilty of driving under the influence of alcohol. Contrary to the State's argument, as soon as defendant learned of the incident, he returned home and he answered the inquiries of the officers. I conclude that defendant was not proved guilty of reckless homicide beyond a reasonable doubt.

I would reverse the judgment of the circuit court.